453 F.Supp. 1021 (1978)
VENETIAN TERRAZZO COMPANY, Plaintiff,
v.
CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY, et al., Defendants.
No. 77-309C (B).
United States District Court, E. D. Missouri, E. D.
May 30, 1978.
*1022 J. Dennis O'Leary, William Sitzer, Dubail, Judge, Kilker & Maier, St. Louis, Mo., for plaintiff.
Fordyce & Mayne, James Eckhoff, St. Louis, for defendants.

MEMORANDUM
REGAN, District Judge.
This matter is before the Court on motion of defendants for summary judgment and on cross-motion of plaintiff for summary judgment on the issue of liability.
On October 2, 1975, a load of 1,122 boxes of Terrazzo tile on railroad car SP-673397 consigned to plaintiff at Chesterfield, Missouri, was shipped from Laredo, Texas. Thereafter, on October 10, 1975, a load of 1,128 boxes of Terrazzo tile on railroad car MP-252415 was shipped to plaintiff over another route. In each instance the delivering carrier was defendant Chicago, Rock Island & Pacific Railroad Company. At all relevant times, defendant William Gibbons operated the railroad as Trustee appointed in reorganization proceedings. This action was brought to recover for alleged damage to the tile in transit.
The controverted issue on defendants' motion for summary judgment is whether plaintiff timely complied with the mandatory notice requirement of Section 2(b) contained in each of the uniform straight bills of lading which provides in relevant part:
"As a condition precedent to recovery, claims must be filed in writing with the . . . carrier . . . within nine months after delivery of the property."
The facts which in the judgment of the parties might have any bearing upon the issue have been stipulated by the parties. In addition, plaintiff has submitted an affidavit of its president.
Each bill of lading contains the standard printed receipt of the initial carrier for the boxes of Terrazzo file listed thereon, expressly noting, however, that the condition of the contents of the boxes was unknown. In each instance, the railroad car was delivered to the railroad's team track at Chesterfield, Missouri, where it was subsequently unloaded by plaintiff at some time between October 20, 1975 and October 24, 1975, and trucked to the construction site where the tile was later to be laid. The exact dates of delivery of the cars are not stipulated, but in any event, delivery was effected not later than October 24, 1975, so that, at the very latest, the nine-month period for filing a written damage claim expired on July 24, 1976.
At some time between October 20, 1975 and October 24, 1975, and again on November *1023 12, 1975, the railroad was orally advised by plaintiff of what appeared to it to be damage to the 2500 boxes of Terrazzo tile. Pursuant to plaintiff's oral request, the railroad inspected car SP-673307 on October 24, 1975. The Exception Report # 225, prepared in connection with that inspection (which was made after the car was partly unloaded), after noting that there was "visible damage," states "Damage caused by boxes of tile tilting on skids and breaking off corners of tile. The bands broke on one skid and two boxes broke open."
After plaintiff unloaded the cars and trucked the boxes of tile to the construction site, it stored them in a trailer until May, 1976, at which time plaintiff began its work of installing the tile. Subsequently, on June 2, 1976, at plaintiff's oral request, the railroad made an inspection of the material which had been unloaded from car SP-673307.[1] The Exception Report # 225A made pursuant to this June 2, 1976 inspection as a supplement to the October 24, 1975 Report (this time noting that the damage was "concealed"), states:
"Inspection requested by the above consignee 6/2/76 and made 330 pm same date at the job site Chesterfield Maul of material stored in a Highway Trailer said to have been removed from SP673307 on or about October 20th to 24th 1975 at the Rock Island Chesterfield, Mo. siding and trucked to the above job site. Inspection made on 10 palletts  containing 54 ctns. 8 ps per ctn ¾" tile Roman Terrazzo color m-64 TOFEE per pallet. Many of the steel bands holding the ctns together and on pallet were broken, most ctns were leaning on pallet, ctns showed considerable scuffing and abrasion marks. Consignee advised no damage visible until cartons opened to be used which revealed that many tile had corners broken off and some tile broken in half. Consignee advised that he was able to use many of the broken tile where cutting was necessary but would not be able to make use of all the damage. The pallets of tile had been transferred from car to trucks and hauled approx. one mile to construction site and stored in hiway trailer until time for use."
Each of the Inspection Reports specifically states: "This report is NOT (sic) an admission of Liability, Notice of Claim or Notice of Intent to File Claim."
The first (and only) written communication addressed or delivered by plaintiff to defendants within the nine-month period is a letter dated June 7, 1976.[2] This letter, written by plaintiff's president to attention of the inspector who prepared the June 2 Exception Report reads as follows:
"Re: Exception Report # 225A 10/24/75
Dear Sir:
There are two railroad cars involved in this damage inspection.
The car numbers are SP 673307 as mentioned in the above report and car number MP 252415.
The second car should also be inspected for damages.
 Yours very truly,"
It is plaintiff's contention that this letter, read in the light of the other facts, suffices as a compliance with Section 2(b) of the Bills of Lading. Commendably, plaintiff concedes that "oral notice and the carrier's actual knowledge of the loss or damage clearly are not sufficient to constitute a written claim," but argues that in view of the various oral communications, the Exception Reports, and several written communications from railroad personnel "acknowledging" the existence of a claim, the *1024 June 7 letter qualifies as a "claim in writing" within the purview of Section 2(b). We do not agree.
In Am.Jur.2d Carriers, § 585, page 106, it is said:
"The claim in writing must be, at the minimum, a written document, however informal in expression, expressing an intention on the shipper's part to claim reimbursement from the carrier for a loss asserted to have incurred in the past, . . . In other words, the notice, whatever its form, must be more than a notice that the goods have been damaged, it must contain a claim for compensation or indicate an intent to claim."
And in § 1005.2(b), C.F.R., (in effect at the times here in question) the Interstate Commerce Commission has mandated that to qualify as a notice of claim, the communication in writing must as a minimum, assert liability for the alleged damage to the property and make claim for the payment of the amount thereof.
It is thus apparent that the writing relied on as a notice of claim must be more than a mere notice of damage. That is, no matter how informally worded, the writing must indicate the shipper's intent to claim reimbursement from the carrier for damages for which the carrier is alleged to be liable. The June 7, 1976 letter does not do so. Hence, even if it be true, as plaintiff asserts, that the amount of its monetary damages could not be ascertained within the nine-month period, it was nevertheless necessary for plaintiff to present a timely written notice of claim for an uncertain amount.
Neither the purpose nor the effect of the June 7 letter was to present a claim, as the background facts pertinent thereto make abundantly evident. As we have noted, Exception Report No. 225 pertains to an inspection of car SP-673307 made October 24, 1975. The supplementary Exception Report (No. 225A) was made on June 4, 1976 following another inspection on June 2, 1976, again at plaintiff's request. It, too, pertained to car SP-673307. As the letter of June 7 makes clear, it was obviously precipitated by the fact that the supplementary report, as the earlier one, made no reference to car MP 252415. It is to be noted in this connection that nothing in the stipulated facts indicates that the railroad had been requested to inspect car MP 252415 prior to June 7. In this context, the sole purpose of the June 7 letter was to request an inspection of car MP 252415 for damage. Not only was the letter addressed to the attention of the inspector, it is entitled, "Re: Exception Report # 225A 10/24/75."
But for the desire of plaintiff to obtain an inspection of car MP 252415, if possible, the letter of June 7, 1976 would never had been written.[3] There is no language in the letter expressive of an intent to claim reimbursement or compensation from the carrier for damages to the contents of either car, nor any indication therein of a claim that the railroad was liable for such damages. In our judgment, the fact, if so, that plaintiff had theretofore orally informed "defendant" that plaintiff would look to defendant for reimbursement is not a substitute for a written notice thereof, particularly since the letter makes no references at all to any oral communication.
Plaintiff also stresses "admissions" by defendant's employees that a "claim" had been made by plaintiff, even though no written claim had in fact been submitted. These "admissions" cannot have the effect of relieving plaintiff of its obligation to make a timely claim in writing. The first such "admission" was in a November 15, 1975 communication from the railroad's billing agent when he was insisting upon payment of the two freight bills. Therein, he acknowledged his "understanding" that plaintiff had a "claim on some mdse" and pointed out not only that any such claim *1025 had no bearing on the freight charges but would be handled with another department. However, when note is taken of the affidavit of plaintiff's president that on November 12, 1975 he had orally told "defendant" of his company's claim for damages, it is clear not only that his November 12 call was precipitated by "duns" for payment, but that the billing agent's "understanding" was based only on what plaintiff's president had stated as his excuse for nonpayment.
So, too, the reference to "claim" in the railroad's response to the June 7, 1976 letter cannot be considered as a waiver of the necessity of filing a proper written claim. For one thing, the answering letter states that it is in reply to plaintiff's letter "regarding an exception report on MP252415." And for another, there is not the slightest recognition by defendant that the June 7, 1976 letter was considered by it as a notice of claim. To the contrary, the clear indication is that the writer intended to say no more than that in the event a claim was filed with respect to car SP673307, it would be handled through the regular channels. Wholly aside from the question as to whether the requirement of a written notice may be waived (see Georgia, Florida & Alabama Railway Company v. Blish Milling Company (1916) 241 U.S. 190, 197, 36 S.Ct. 541, 60 L.Ed. 948), there is no factual basis whatever for any contention that by these "admissions" relating to the existence of a "claim" plaintiff was misled into believing that a timely written claim would not be necessary.
It follows from the foregoing that defendants' motion for summary judgment should be and is hereby sustained and that plaintiff's motion for summary judgment should be and is hereby overruled. We add that in no event would plaintiff be entitled to summary judgment on the issue of liability. In addition to the requirement that a timely written notice of claim be filed, it is incumbent upon plaintiff to prove that the carrier is liable for the damages claimed. The mere fact that when the boxes of tile were received by the initial carrier they were in "apparent good order" does not necessarily eliminate the requirement that plaintiff prove that the shipper properly packed and loaded the boxes and that the contents of the boxes were damaged in transit.
NOTES
[1] In their stipulation the parties state that on or about October 24, 1975, there were oral discussions between agents of the parties concerning an appropriate time to open individual boxes of tile for inspection and at that time plaintiff advised defendant that if inspection was made at the time of installation of the tile, the separation of broken tile from whole tile could be done more efficiently and that many of the broken tiles could be used. In his affidavit, plaintiff's president stated that on or about November 12, 1975 and on June 2, 1976 he made similar statements to "defendant" in telephone conversations.
[2] A formal notice of claim was filed on August 16, 1976, more than three weeks after the nine-month period had elapsed.
[3] Rather surprisingly, the claim for damages which plaintiff ultimately made (by letter of August 16, 1976) on its face is limited to car SP-673307. The two cars, of course, had been routed over different railroads and at different times. We are not advised as to whether the contents of each had been segregated after the cars reached Chesterfield.