.WESTHEMECO LTD., Plaintiff,

v.

NEW HAMPSHIRE INSURANCE COMPANY and Florida East Coast Railway Company, Defendants and Third-Party Plaintiffs,

v.

ALBERT PIPE SUPPLY CO., Standard Pipe Protection Division—General Steel Industries, Inc., Tubeco, Inc. and Crippen Pipe Fabrication Co., Third-Party Defendants.

No. 77 Civ. 4179(IBC).

United States District Court, S. D. New York.

Feb. 8, 1980.

Feder, Barnett & Platt, New York City; Franklin D. Tell, New York City, of counsel for plaintiff.

Greenhill, Speyer & Thurn, New York City; Dennis M. Perlberg, New York City, of counsel for plaintiff.

Bleakley, Platt, Schmidt & Fritz, New York City, for defendants and third-party plaintiffs Florida East Coast Ry.; Hyman Hillenbrand, New York City, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Defendant and third-party plaintiff Florida East Coast Railway Company (Fla. Rwy.) moves for partial summary judgment against plaintiff Westhemeco Ltd. (Westhemeco) on the grounds that plaintiff failed to file timely written claims and commence this action within the limitations period prescribed by the Bill of Lading Contract of Carriage entered into by Westhemeco and Fla. Rwy.

We have had occasion to discuss the facts and procedural history of this complex action on two prior occasions. *Westhemeco, Ltd. v. New Hampshire Ins. Co.*, 82 F.R.D. 702 (S.D.N.Y.1979); *Commercial Union Ins. Co. v. Albert Pipe & Supply Co.*, 484 F.Supp. 1153 (S.D.N.Y.D.C.1980).

Since we recognized that the instant motion, if granted, affects approximately three-fourths of Westhemeco's claims against Fla. Rwy., we have repeatedly extended the time for submission of any material bearing on it. Fla. Rwy's Notice of Motion was filed on June 12, 1978. Briefing was completed in early January, 1979. After a full review of the papers, we were satisfied that it was the better part of wisdom to extend the deadline for submissions until completion of discovery between Westhemeco and Fla. Rwy. Counsel in the within action were advised by letter of March 15, 1979 that all discovery was to be completed by July 16, 1979 and that: "We are likewise postponing consideration of defendant Florida East Coast Railway's motion for partial summary judgment until the same adjourned date in the belief that possibly some matter may come to light which may support either the movant or the opponent."

At the request of plaintiff's counsel, on June 11, 1979 the discovery deadline was

adjourned to the first Monday in October, 1979. Our letter to all counsel further stated, "The same adjournment is also applicable to the pending summary judgment motion." Finally, in our memorandum decision of October 5, 1979, we directed that there be "[s]ubmission of any additional papers relating to Fla. Rwy's pending summary judgment motion, under advisement since March, 1979, within forty-five (45) days from the date of the entry of this order."

Despite the extensions, postponements and adjournments given on this motion, neither party submitted any additional memoranda, documents or affidavits relating to it.

### Facts

We turn now to a summary of the undisputed facts. Pursuant to the Bill of Lading, Fla. Rwy. agreed to transport pipe for Westhemeco by rail from New York to Florida. These shipments began on November 19, 1973 and continued until July, 1974. The instant motion is concerned solely with the shipments which occurred between November 19, 1973 and March 25, 1974.[1]

After each shipment arrived at its destination, Westhemeco requested an inspection. Thereupon, Fla. Rwy. prepared one inspection report per shipment. The so-called "joint inspection reports" clearly showed that some of the pipe had been damaged by the time it reached Florida. Westhemeco submitted written claims to Fla. Rwy. dated December 30, 1974 and January 13, 1975, received by Fla. Rwy. on January 6, 1975 and January 17, 1975, respectively. The claims dealt, in part, with the shipments here in controversy.[2]

By letter dated January 17, 1975, Fla. Rwy. refused to honor the written claims, stating that the "notice of intent to file claim" of damages was not received within the time limitations prescribed in the Bill of Lading, which provides that notice of intent must be received by the "Origin [sic] or destination carrier within 9 months from the delivery date of the shipment." Fla. Rwy. took the position that it was "prohibited by law from making any payment." Our determination of the application now before us rests to such a large extent upon the letter that we are prompted to set it out in full at this juncture:

FLORIDA EAST COAST RAILWAY
COMPANY

ONE MALAGA STREET, ST. AUGUS-
TINE, FLORIDA 32084

FEC

January 17th.1975

Mr. J. P. Cronin
Westhemeco, Ltd Mechanical Contractors
50 Broadway, Hawthorne
New York, N. Y. 10532

Dear Mr. Cronin:

Replying to your [sic] of December 30th.1974 and letter of January 13th.1975 which are notices of intent to file claim on the CX reports and cars as mentioned on these CX'S.

| | | |
|---|---|---|
| CX–209 | CX–72 | CX–39 |
| CX–143 | CX–73 | CX–40 |
| CX–144 | CX–75 | CX–41 |
| CX–145 | CX–76 | CX–21 |
| CX–102 | CX–77 | CX–17 |
| CX–108 | CX–78 | CX–733 |
| CX–109 | CX–79 | CX–734 |
| CX–110 | CX–86 | CX–732 |
| CX–101 | CX–85 | |
| CX–99 | CX–87 | |

---

1. The railroad car numbers involved were:

| | | |
|---|---|---|
| CX–174 | CX–115 | CX–70 |
| CX–173 | CX–117 | CX–71 |
| CX–214 | CX–119 | CX–69 |
| CX–176 | CX–113 | CX–46 |
| CX–177 | CX–64 | CX–44 |
| CX–183 | CX–717 | CX–47 |
| CX–184 | CX–719 | CX–48 |
| CX–185 | CX–721 | CX–49 |
| CX–186 | CX-722 | CX–50 |
| CX–189 | CX–728 | CX–24 |
| CX–190 | CX–729 | CX–26 |
| CX–191 | CX–88 | CX–36 |
| CX–206 | CX–89 | CX–37 |
| CX–208 | CX–90 | CX–38 |

2. The parties did not provide the Court with copies of the claims. The content of the claims, however, is not at issue; we are solely concerned with their undisputed dates.

I should like to advise even if these letters were recieved [sic] within the time specified by the Rail Carrier Bill of Lading Contract, they would have been invalid account [sic] you did not give any references as to the cars that you were filing a notice of intent to cover.

The CX'S and Cars which are attached,** the notice of intent was not recieved [sic] within the time limitation as set forth in the Bill of Lading contract section 2(B) which states that either a notice of intent to file claim or formal papers must be recieved [sic] by either the Origin [sic] or destination carrier within 9 months from delivery date of the shipment. Therefore rail carriers are prohibited by law from making any payment.

Yours truly,

J. W. Fant, Jr.

Freight Claim Agent

Attachments: **

Section 2(b) of the Bill of Lading provides as follows:

> As a condition precedent to recovery, *claims must be filed in writing* with the receiving or delivering carrier issuing the bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, *within nine months after delivery of the property. . . . and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim* or any part or parts thereof specified in the notice. *Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable and such claims will not be paid.* (emphasis added)

As quoted in the Affidavit of J. W. Fant, verified January 25, 1978, ¶ 6. Plaintiff concedes that with respect to the shipments at issue, it did not file a formal notice of claim within the prescribed nine month period. (Memorandum of Law in Opposition to the Motion for Partial Summary Judgment,

filed Nov. 16, 1978, p. 3.) It is also undisputed that this action was commenced more than two years and one day after the letter of January 17, 1975.

For the reasons hereinafter assigned, we grant Fla. Rwy's motion for partial summary judgment.

Legal Discussion

■ Section 2(b) of the Bill of Lading is derived from section 20(11) of the Interstate Commerce Act (commonly known as the "Carmack Amendment") which provides in pertinent part:

> That it shall be unlawful for any such receiving or delivering common carrier to provide by rule, contract, regulation, or otherwise a shorter period for the filing of claims than nine months, and for the institution of suits than two years, such period for institution of suits to be computed from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. . . .

49 U.S.C. § 20(11). Section 20(11) is not a statute of limitations but rather a statutory determination of what is a reasonable period of limitations for a carrier to impose. *Louisiana & Western R. R. Co. v. Gardiner*, 273 U.S. 280, 284, 47 S.Ct. 386, 388, 71 L.Ed. 644 (1927); S. Sorkin, How to Recover for Loss or Damage to Goods in Transit § 10.-02[1] (1979) [hereinafter cited as Sorkin]. The carrier may not waive or be estopped from asserting the bill of lading's time limitation provisions. *Chesapeake & Ohio Ry. Co. v. Martin*, 283 U.S. 209, 221, 51 S.Ct. 453, 458, 75 L.Ed. 983 (1931); *Georgia, Fla. & Ala. Ry. v. Blish Co.*, 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916); *B. A. Walterman Co. v. Pennsylvania R. R. Co.*, 295 F.2d 627, 628 (6th Cir. 1961).

Fla. Rwy argues that Westhemeco did not comply with both of the limitations periods prescribed by section 2(b) of the Bill of Lading in that (1) it failed to file written claims within nine months from the date of delivery of each shipment here at issue;

** Attached to the letter is the schedule of carloads set forth in footnote 1 *supra*.

and (2) it failed to commence the instant action within two years and one day from the date that Fla. Rwy disallowed the claims which were filed late. We will discuss each allegation in turn.

### Nine month period

Although no formal written claim was filed with Fla. Rwy. within nine months of the last date of delivery involved (March 25, 1974) plaintiff contends that the joint inspection reports, prepared by Fla. Rwy. and signed by plaintiff's agents, constitute a notice of intent to file a claim, and that the entire course of dealing between plaintiff and Fla. Rwy. is sufficient to charge Fla. Rwy. with actual notice of the claims. *See* Affidavit of Ralph Bankes, Jr., Secretary of Westhemeco, verified Sept. 15, 1978, ¶ 7 [hereinafter Bankes Affidavit].

The nine month period for filing claims applies to each individual shipment even where, as here, the parties engage in a series of shipments. Sorkin, *supra*, 7.02[3]. The bill of lading requirement that a writing be submitted must be adhered to, even where the carrier has actual knowledge of the shipper's or consignor's claim. *Gooch v. Oregon Short Line R. R. Co.*, 258 U.S. 22, 24, 42 S.Ct. 192, 193, 66 L.Ed. 443 (1922); *St. Louis, Iron Mountain & So. Ry. Co. v. Starbird*, 243 U.S. 592, 603–04, 37 S.Ct. 462, 467, 61 L.Ed. 917 (1917). However, a court should liberally construe the nature of the writing required to determine whether a claim has been made. *Georgia, Fla. & Ala. Ry. v. Blish Co.*, 241 U.S. 190, 198, 36 S.Ct. 541, 545, 60 L.Ed. 948 (1916); *Atchison, T. & S. F. Ry. Co. v. Littleton Leasing and Investment Co.*, 582 F.2d 1237, 1240 (10th Cir. 1978).

It is clear that Fla. Rwy. had notice of damage to the pipe from the joint inspection reports. Notice of damage, it must be emphasized, is not equivalent to a claim for damages. *B. A. Walterman Co. v. Pennsylvania R. R. Co.*, 295 F.2d at 628. Similarly, a joint inspection report is not a claim for damages, for it does not assert the carrier's liability for the damage nor does it include a statement of an intent to claim reimbursement or restitution from the carrier. *See Venetian Terrazzo Co. v. Chicago, R. I. & P. R. R. Co.*, 453 F.Supp. 1021, 1024 (E.D.Mo.1978); *United States Steel Int'l Inc. v. SS. Lash Italia*, 439 F.Supp. 365, 370 (S.D.N.Y.1977).

Other courts, choosing what is clearly a minority viewpoint, have asserted that a carrier may not use the nine month rule as a shield to liability where the facts show that the carrier had actual knowledge that the shipper intended to file a claim and where there is a writing identifying the particular shipment and setting forth the damages incurred. *See, e. g., Loveless v. Universal Carloading & Distributing Co.*, 225 F.2d 637 (10th Cir. 1955). Following this minority view, the Court of Appeals for the Seventh Circuit has dispensed with the requirement of submission of a writing by the consignor "where the carrier has or is chargeable with actual knowledge of all the conditions as to the damages that a written notice could give." *Hopper Paper Co. v. Baltimore & O. R. Co.*, 178 F.2d 179, 181 (7th Cir. 1949).

Clearly, under the majority view summary judgment should be granted. Plaintiff Westhemeco urges us, however, to adopt the minority position. To determine the extent of Fla. Rwy's actual knowledge, we must inquire further into the facts alleged.

Despite numerous opportunities to provide the Court with additional evidence of the extent of Fla. Rwy's actual knowledge, or lack thereof, neither party responded. We are thus confronted with the following unrebutted statement by Ralph Bankes, Jr., Secretary of Westhemeco: "The only reason that the letters of December 30, 1974 and January 13, 1975 [the written claims] were sent was that Mr. Cronin [plaintiff's office manager] was requested to send such letter [sic] by railway." Bankes Affidavit, ¶ 7.

Since this is a motion for summary judgment, ambiguities in the facts are construed against the movant. *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). Summary judgment is not appropriate where issues arise concerning

the intent of a party. *Id.* Here we may be faced with a situation where Fla. Rwy. has used the nine month rule as a shield to bar liability. On the scanty record before us, we cannot determine whether writings in addition to the joint inspection reports exist. We are, therefore, unable to rule as a matter of law that the defendant had actual knowledge that plaintiff intended to file a claim. It is not necessary, however, for the Court to choose between the two views espoused since the instant motion is disposed of by our analysis below.

### Two years and one day period

The above factual problem is not present with regard to the failure of plaintiff to commence this action within two years and one day of the letter declining payment. Mr. Bankes offers the following explanation for the delay:

> your deponent was aware of said letter but by reading the plain words of the letter cannot, as a layman unfamiliar with the rules and regulations of the railways and other common carriers, see any words within the four (4) corners of the aforesaid letter where the railway declined to pay the claims. The letter merely served to confirm to the undersigned and to Mr. Cronin what the railway had told us orally as far as rules and regulations and it was not until he consulted attorneys with regard to pursuing this claim against your insurance carrier that he became aware that the railway was relying upon this letter as a declination.

Bankes Affidavit, ¶ 9.

A letter of declination must be "clear, final and unequivocal." *Polaroid Corp. v. Hermann Forwarding Co.*, 541 F.2d 1007, 1012 (3rd Cir. 1977). It is irrelevant whether the grounds for rejection are legally correct. As noted by the Court of Appeals for the Ninth Circuit, "To be effective a notice of disallowance must clearly convey to the claimant the message that his claim

has been rejected. A 'clear, final and unequivocal' notice, whether legally correct or not, will begin the running of the bill of lading's limitation period." *Cordingley v. Allied Van Lines, Inc.*, 563 F.2d 960, 964 (9th Cir. 1977), *aff'g*, 413 F.Supp. 1398 (D.Mont.1976).

Plaintiff relies on *John Morrell & Co. v. Chicago, Rock Island and Pac. R. R. Co.*, 495 F.2d 331 (7th Cir. 1974). There the court stated that the material question is whether the carrier's notice of disallowance "made it clear that the claim as submitted would not be honored." 495 F.2d at 333. If subsequent correspondence is needed to clarify the denial, there is an absence of "clear finality." *Id.* In this vein, Westhemeco argues that the phrase "prohibited by law" in Fla. Rwy's letter of January 17, 1975 is ambiguous.

We disagree. Despite the letter's awkward phrasing, its meaning is clear. Fla. Rwy. explained that it denied the claim for two reasons: (1) plaintiff's formal notices were filed after the nine month period expired; and (2) plaintiff did not specify which carloads it intended to cover with its claim. The phrase "prohibited by law" further explained why Fla. Rwy. disallowed the claims. Clearly the intent was unambiguous. Furthermore, even if we were disposed to follow the reasoning of *Morrell*, that the limitations period does not commence if the letter lacks "clear finality,"[3] there is no basis in the record for a finding that plaintiff was confused about the letter's meaning since no subsequent clarification of the letter was ever timely sought by plaintiff, nor had Fla. Rwy. ever adopted a position inconsistent with the letter.

Accordingly, we deem the letter of January 17, 1975 to be a "clear, final and unequivocal" disallowance of plaintiff's claim with respect to the carloads which are the subject of this motion for partial summary judgment. We conclude that the instant

---

**3.** *Morrell*'s reasoning has been rejected by other courts in this district. *See, e. g., B. F. Goodrich Tire Co. v. Louisville & Nashville R.* *Co.*, 439 F.Supp. 363 (S.D.N.Y.1977) and cases cited therein.

action was not timely commenced under the time limitations of the Bill of Lading.

### Conclusion

Fla. Rwy's motion for partial summary judgment is granted in all respects.

SO ORDERED.