Michael J. Siris, New York City, for plaintiff.

Kelley Drye & Warren, New York City, for defendant.

**CONSOLIDATED RAIL CORPORATION, Plaintiff,**

v.

**CONTAINAIR SYSTEMS CORPORATION, Defendant.**

**No. 80 Civ. 6814 (VLB).**

United States District Court, S.D. New York.

Aug. 31, 1981.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

*Introduction*

The plaintiff railroad ("Conrail") has invoked the Interstate Commerce Act, 49 U.S.C. § 10101, *et seq.* (1980), to recover payment of detention and storage charges allegedly owed to it by the defendant corporation ("Containair").

The parties have stipulated the material facts and each has moved for summary judgment. For the reasons set forth below, upon the stipulated facts plaintiff's motion for summary judgment is granted, and defendant's motion is denied.

### II.

*The Facts*

The storage and detention charges involved in this action were made in connection with 18 container shipments that were

transported by Conrail in interstate commerce. Containair was the consignee or beneficial owner of each of these shipments.

After each shipment arrived at the Conrail rail yards at Portside, New Jersey, Containair was notified of the availability of the shipment. Containair then retrieved the trailers containing the shipment from the Conrail facility; the trailers were subsequently returned to the yards.

Each of these transactions was documented by the execution of a "Trailer/Container Use Agreement," which contained the terms and conditions governing the use of the trailers. These forms were used to record the dates when the trailers were picked up and returned. The agreement also specified that applicable tariffs would provide the basis for calculating charges, but it did not specifically enumerate these charges:

> ... User agrees to pay Consolidated Rail Corporation for use of the trailer accepted hereby the amount currently designa[ted] by applicable tariffs, supplements thereto or reissues thereof. Consolidated Rail Corporation will render bills currently [for] the applicable charges and the User will make payments in accordance with established credit regulations.

The form contained a space for "detention charges," in which Conrail later inserted the amount of such charges; in a space marked "other charges," it later supplied the charge for storage.

After the charges were calculated, Conrail eventually presented Containair with bills for the storage and detention charges.

The bill dates were, in some instances, considerably after the end of the storage period.[1] The charges made on these bills, which amounted to a total of $15,152.60, were imposed in accordance with the legal tariffs on file with the Interstate Commerce Commission. Defendant does not contend that the services to which these bills pertain were not rendered.

---

1. For example, the storage of one shipment ended on June 26, 1979, but the bill date was

III.

*Discussion*

■ Although it concedes that the charges accurately reflect the governing tariffs, Containair contends that it should be excused from paying because it was not properly informed of the rates for storage and detention and because it was not billed by Conrail in a timely manner.

Before addressing the merits of these defenses, it is necessary to place this litigation in perspective. This is not an ordinary action for services rendered. Liability must be determined in accordance with the clearly defined purposes of the Interstate Commerce Act, the central objective of which is to guard against rate discrimination in the transportation industry. *See, e.g. Midstate Horticultural Co., Inc. v. Pennsylvania Railroad Co.,* 320 U.S. 356, 361, 64 S.Ct. 128, 130, 88 L.Ed. 96 (1943) ("The Act is affected throughout its provisions, with the object not merely of regulating the relations of carrier and shipper *inter se,* but of securing the general public interest in adequate, nondiscriminatory transportation at reasonable rates."). In enforcing this policy, the courts have exhibited extraordinary deference to the terms of published tariffs, and have applied them strictly, even where a carrier has misrepresented rates or has otherwise acted inequitably. *See, e.g., Louisville and Nashville Railroad Company v. Maxwell,* 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915); *Illinois Central Gulf Railroad Company v. Golden Triangle Wholesale Gas Company,* 586 F.2d 588 (5th Cir.1978) ("*Golden Triangle*"); *In Re Penn Central Transportation Company,* 477 F.2d 841, 844 (3rd Cir.), *aff'd sub nom. United States Steel Corp. v. Trustees of Penn Central Transportation Co.,* 414 U.S. 885, 94 S.Ct. 231, 38 L.Ed.2d 137 (1973).

The Fifth Circuit has summarized the well established law in this area:

March 29, 1980.

[F]iled tariffs have the force of law, ... and establish the liability of a recipient of services covered by the tariff, even if the recipient was quoted a different price ... or was a party to a contract under which the services were to be provided at a different price ... A carrier cannot waive or modify legally applicable tariffs ... and individual hardship is not a defense to the application of such tariffs ... Equitable considerations cannot justify a carrier's failure to collect authorized tariff charges.

*Golden Triangle, supra,* 586 F.2d at 592 (citations omitted). By enforcing tariffs with unwavering diligence, the courts have assured that rate discrimination cannot be conducted in subtle forms. "In limiting the defenses available to a shipper in an action to recover tariff charges, courts have expressed concern that the parties may seek through sham devices to avoid application of the tariffs." *Consolidated Rail Corp. v. Standard Milling Co.,* 508 F.Supp. 277, 279 (W.D.N.Y.1981). It is against this background that Containair's defenses must be evaluated.

The defendant argues that it is not obligated to pay because it was never informed of the rates that would be charged for detention of the trailers and that the Trailer/Use Agreement did not specifically refer to "storage charges." It is true that the tariffs require the carrier to execute an agreement "on a form to be furnished by rail carrier, covering utilization of trailer" by the consignee.[2] And it is also true that the agreement executed by the parties in this case did not enumerate the rates charged for detention and storage. Although the agreement did incorporate applicable tariffs by reference, Containair contends that it was not enough to allude to the tariffs in the agreement but that Conrail should have been able to quote the precise rate to Containair. It also contends that, because the tariffs were difficult or expensive for a relatively small shipper to obtain, Conrail had a duty to provide the tariff information directly to the customer.

As a matter of equity, it may be that a railroad should be able to provide a customer with the rates it is charging, so that the customer can plan its expenditures. There is an obligation for a carrier to post its rates.[3] But even assuming that Conrail somehow violated its obligation of disclosure[4]—a finding which I need not make—there simply is no authority to permit a customer to avoid tariff-imposed charges because the rates were not disclosed by a branch office of a railroad. Indeed, the overwhelming authority, as discussed earlier, is that a failure properly to disclose rates is no justification for excusing compliance with the tariffs. As the Supreme Court established in an early case:

Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travellers are charged with notice of it, unless it is found by the Commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

*Louisville and Nashville Railroad Company v. Maxwell, supra,* 237 U.S. at 97, 35 S.Ct. at 495.

Defendant also argues that it should be excused from payment because Conrail did not comply with federal regulations governing the extension of credit. In particular, Containair claims that the railroad violated one regulation by billing for the detention charges long after these services were rendered. *See* 49 C.F.R. § 1320.10

---

2. See Traffic Executive Association, Tariff 838–A, Item 570(9).

3. See 49 C.F.R. § 1305.0 *et seq.* (1980).

4. On the record presently before me, it is not clear whether Conrail complied with the regulations that require posting of tariffs at stations and freight offices. See 49 C.F.R. § 1305.1.

(1980).[5] As a threshold matter, this regulation does not even appear to apply to detention and storage charges. Its text refers to "freight bills for all *transportation* charges" (emphasis added) which are to be presented after "forwarding of prepaid shipment or delivery of collect shipments ..." This regulation thus appears to apply to the charges levied for the transportation of freight, not to detention and storage charges, which appear to be governed by 49 C.F.R. § 1320.5 (1980). But even assuming, *arguendo,* that the timing provisions of § 1320.10 apply to storage and detention charges, nothing in the regulation permits the cancellation of charges payable in accordance with legal tariffs as a sanction for untimely billing.[6] The regulation, along with others in the same subpart, implement the congressional purpose of preventing rate discrimination in the form of differential credit arrangements. They provide no basis for imposing the extraordinary relief of excusing compliance with applicable tariffs.

## IV.

*Conclusion*

In sum, the tariffs govern. Conrail is entitled to recover the storage and detention charges due to it. Judgment is to be entered for the plaintiff for $15,152.60.

SO ORDERED.

**5.** Text of 49 C.F.R. § 1320.10 (1980):
§ 1320.10 Presentation of freight bills.
Every carrier shall present freight bills for all transportation charges except those specifically excepted in this part to shippers prior to the first 12 o'clock midnight following forwarding of prepaid shipments or delivery of collect shipments except that when information sufficient to enable the carrier to compute the tariff charges is not then available to the carrier at the billing point, the freight bills shall be presented not later than the first 12 o'clock midnight following the day upon which sufficient information becomes available at the billing point of the carrier. A carrier shall not extend further credit to any shipper which fails to furnish sufficient information to allow the carrier to render a freight bill within a reasonable time after the shipment is tendered to the origin carrier. As used in this section the term "shipper" includes, but is not limited to, freight forwarders as well as shippers' asso-

ciations and shippers' agents within the meaning of section 402(c) of part IV of the Interstate Commerce Act.

**6.** Moreover, there is no evidence before me that Conrail actually failed to comply with the timing provisions of § 1320.5. The regulation provides that the freight bill must be presented the day after the necessary information becomes available to the billing point of the carrier. In this action, the only evidence concerning the amount of time intervening between the appearance of the necessary information at the billing point and the presentation of the bill is contained in the affidavit of Robert McGlinchey who asserts that once information reached the billing point, "bills are processed in a timely fashion." To raise a question of fact with respect to this issue, defendant was obligated to come forward with opposing evidence or to request discovery. Rule 56(e), Fed.R.Civ.P.