**AMERICAN EXPRESS TRAVEL RE-LATED SERVICES COMPANY, INC., Plaintiff,**

**v.**

**Max MARCO and Demarco Cal Fabrics 570 7th Ave., New York, N.Y. 10018 Acct # 3782 629041 21001, Defendants.**

**Max MARCO and Demarco Cal Fabrics 570 7th Ave., New York, N.Y. 10018 Acct # 3782 629041 21001, Third-Party Plaintiffs,**

**v.**

**BRITISH AIRWAYS, Third-Party Defendants.**

**83 Civ. 5731(MEL).**

United States District Court, S.D. New York.

June 27, 1985.

Lester A. Lazarus, P.C., New York City, for defendants and third-party plaintiffs; Harlan M. Lazarus, Wayne M. Albinder, New York City, of counsel.

Condon & Forsyth, New York City, for third-party defendant; Stephen J. Fearon, Wendy A. Grossman, New York City, of counsel.

LASKER, District Judge.

Third-party defendant British Airways moves pursuant to Rules 12(b) and 56 of the Federal Rules of Civil Procedure, to dismiss the third party action. Max Marco and DeMarco Cal Fabrics, third-party plaintiffs (hereinafter collectively referred to as "Marco") oppose the motion on the ground that material facts remain at issue for trial.

For the reasons set forth below, the motion is granted in part and denied in part.

I.

On November 9, 1982, Max Marco and his wife were passengers aboard a London to New York British Airways Concorde flight.[1] Mr. and Mrs. Marco asked for and were given no-smoking section boarding passes upon checking in. Prior to departure, Mr. and Mrs. Marco observed several ticket-holders smoking cigars in the lounge, and upon inquiring about this were told by a British Airways attendant that cigar smoking would not be allowed on the plane.

An error resulted in duplicate boarding passes being issued for the Marcos' seats and they were reassigned to other seats in the no-smoking section. During the flight, cigar smoking continued and was engaged in by passengers in seats surrounding and adjacent to the no-smoking section as well as in the aisles of the aircraft. As a result of the smoke the Marcos became ill and Mr. Marco missed three or four days of work.

Tickets for this flight were charged to the American Express credit card of Max Marco/DeMarco Cal Fabrics. American Express Travel Related Services filed a claim against Marco after he withheld payment for the Concorde tickets. Marco then filed this third party indemnity claim against British Airways. British Airways moves to dismiss the amended third party complaint (hereafter referred to as "the complaint") on the ground that Marco has failed to state a claim upon which relief may be granted.

The complaint alleges seven causes of action. Counts one, two and three seek relief for alleged discrimination in violation of 49 U.S.C. § 1374(b). Counts four and five seek to estop the use of a British Airways tariff as an affirmative defense. Count six claims a violation of the Civil Aeronautics Board ("CAB") regulation governing smoking in air travel. The seventh count alleges a violation of 49 U.S.C. § 1374(a) which imposes a duty on foreign

1. The facts discussed are those alleged in the amended third party complaint.

air carriers to promulgate reasonable rules and practices.

## II.

The complaint alleges violations of 49 U.S.C. § 1374(b), which provides:

No air carrier or foreign air carrier shall make, give or cause any undue or unreasonable preference or advantage to any particular person ... in air transportation in any respect whatsoever or subject any particular person ... to any unjust discrimination or any undue or unreasonable prejudice or disadvantage in any respect whatsoever.

Count one of the complaint alleges that in not enforcing the provision of British Airways' manual instructing them to "firmly discourage" passengers from smoking in the no-smoking section, the crew treated other passengers with undue preference over the Marcos.

■ British Airways moves to dismiss this count on the ground that the discrimination intended to be prevented by the statute is not the type of discrimination alleged. We agree because we are not persuaded that Congress intended to provide for a passenger's every comfort in proscribing "unjust discrimination and undue prejudice." In *Diefenthal v. C.A.B.,* 681 F.2d 1039 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983), the court found no discrimination to arise under 49 U.S.C. § 1374(b) based on distinctions in passenger treatment arising from a smoking/no-smoking differentiation. In that case, as well as in *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332 (3d Cir.1975), the court construed the statute as intending to protect a non-discriminatory right of access to air facilities. The Marcos do not allege any denial of access and were, in fact, aboard the flight. For this reason, count one of the complaint is dismissed, as is count three which alleges discriminatory preference to the smoking passengers when British Airways enforced their boarding passes but not the no-smoking section boarding passes of the Marcos.

■ Count two alleges discrimination arising from the manner British Airways applied its tariff, which specifies "carrier does not guarantee allocation of any particular space in the aircraft." We fail to see how British Airways can be sued for the discriminatory performance of a *negative* contractual provision. However, even if this were possible, we see no connection between this tariff provision and a request for a smoking or no-smoking section seat. Such a request is not for a "particular space." Marco did not ask to sit in a specific seat, but rather in a section of the plane where other non-smokers were seated. The tariff provision appears inapplicable to the situation at hand, as is any allegation that it was discriminatorily applied. For this reason count two of the complaint is dismissed.

## III.

Counts four and five of the amended complaint allege causes of action in equitable and promissory estoppel. They seek to estop British Airways from denying the validity of the oral representation made with respect to smoking by a British Airways attendant, and the written representation contained on the no-smoking section boarding passes issued to the Marcos. British Airways moves to dismiss these counts on the ground that its tariff may not be avoided by invoking estoppel principles. The tariff in question, used by British Airways as an affirmative defense to the estoppel counts, states that "carrier does not guarantee allocation of any particular space in the aircraft." British Airways argues that reliance on the part of Marco on any items extrinsic to the tariff is improper where the representations are contrary to the tariff.

■ Because passengers and shippers are charged with constructive knowledge of their terms, tariffs are not subject to estoppel. *Mao v. Eastern Airlines,* 310 F.Supp. 844, 846 (S.D.N.Y.1970). British Airways cites many cases for the proposition that a carrier's tariffs may not be

avoided by invoking estoppel principles. *See Chesapeake and Ohio Railway v. Martin*, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983 (1931); *Rosch v. United Airlines*, 146 F.Supp. 266, (S.D.N.Y.1956); *Westhemeco Ltd. v. New Hampshire Insurance Co.*, 484 F.Supp. 1158 (S.D.N.Y.1980); *Consolidated Rail Corp. v. Containair Systems Corp.*, 553 F.Supp. 418 (S.D.N.Y.1981). In those cases, however, the language of the tariffs on file applied clearly and specifically to the particular situations at issue. *See, e.g., Consolidated Rail Corp. v. Containair Systems, supra*, in which a storage charge rate was involved. When there was reliance, it was directly to the contrary of a clear and specific tariff on file with the CAB. For that reason it was reasonable to charge the passenger or shipper with knowledge of the tariff provisions. Indeed, public transportation could not operate successfully unless passengers and shippers were chargeable with knowledge of specific tariff provisions relating to the subjects covered.

■ In the case at hand, however, the quoted blanket statement of British Airways in its tariff, "carrier does not guarantee allocation of any particular space in the aircraft," is subject to varied constructions. Because of the tariff's lack of reference to smoking, and therefore its inapplicability, the constructive knowledge of its terms that is charged to Marco is ineffective to overcome the representations made to him. Marco relied on very specific representations which did not necessarily conflict with the tariff.

Were we dealing here with a mathematical or other exact tariff provision, the constructive knowledge and exclusive contractual nature of a tariff would be sufficient to enable British Airways to deny the validity of any contrary representations to the Marcos. However, constructive knowledge of this tariff gave Marco no information relating to smoking. The tariff provision in question has no relationship to whether Marco could be guaranteed a seat in the no-smoking section by a boarding pass or oral representation. A request for a seat in a no-smoking section is not a request for any *particular* space in the aircraft. Accordingly, British Airways' reliance on its tariff is ineffective in this case and Marco is. not prevented from pleading that British Airways should be estopped from denying the validity of the oral and written representations made to him.

British Airways' motion for summary judgment on counts four and five is therefore denied.

## IV.

Count six of the complaint alleges a violation of the regulation governing smoking in air travel, 14 C.F.R. § 252.3 (1983), which provides that "[e]ach air carrier shall take such action as is necessary to ensure that smoking is not permitted in no-smoking sections ...." Marco claims British Airways violated this regulation by permitting passengers to smoke in the no-smoking section of the aircraft.

■ British Airways moves to dismiss, arguing that this CAB regulation does not apply to it because British Airways is not an "air carrier" but rather a "foreign air carrier." The Federal Aviation Act of 1958 ("the Act") defines the terms employed by the CAB regulations. "Air carrier" is defined by the Act as "any citizen of the United States who undertakes ... to engage in air transportation." British Airways is a corporation organized and existing under the laws of the United Kingdom with its principal place of business in the United Kingdom, and the majority of its corporate shares are owned by the United Kingdom. It is not a United States citizen, but falls within the Act's definition of a "foreign air carrier," *see* 49 U.S.C. § 1301(19),[2] and the categories of "air carrier" and "foreign air carrier" are mutually exclusive. *U.S. v. Keuylian*, 602 F.2d

---

**2.** " 'Foreign Air Carrier' means any person, not a citizen of the United States, who undertakes ... to engage in foreign air transportation."

1033, 1039–40 (2d Cir.1979). Accordingly, the CAB regulation does not cover British Airways' conduct and its motion to dismiss count six is granted.

## V.

Count seven of the complaint alleges a violation of subsection (a) of 49 U.S.C. § 1374. This provision requires foreign air carriers to "establish, observe, and enforce just and reasonable ... classifications, rules, regulations, and practices relating to foreign air transportation." Marco claims that British Airways violated the provision by allowing passengers to smoke in the no-smoking section.

British Airways argues that there is no private right of action either explicit or implicit in § 1374(a). Marco responds that there is an implicit right of action under the subsection as it was construed in *Angel v. Pan American World Airways*, 519 F.Supp. 1173, 1177–78 (D.D.C.1981) and *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1049–51 (5th Cir.1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983). These cases, however, refer only to a private right of action under § 1374(b). Accordingly, we proceed to consider whether under general principles a private right of action under the statute may be implied.

■ In deciding "whether a private remedy is implicit in a statute not expressly providing one," four factors are determinative. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).[3] The first is whether the statute was enacted to protect a particular class of beneficiaries. Since § 1374(a) names no particular class to be protected, and only general language is used in the statute, it suggests no intent to create a private right. *California v. Sierra Club*, 451 U.S. 287, 294–5, 101 S.Ct. 1775, 1779–80, 68 L.Ed.2d 101 (1981).

The second factor calls for an examination of a specific legislative intent to create or deny a private right. As discussed in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 13–15, 101 S.Ct. 2615, 2622–2623, 69 L.Ed.2d 435 (1981), the fact that the statute is part of an act containing a detailed and explicit enforcement scheme implies a legislative intent to deny a private right of action. Such a scheme is contained in the Act at 49 U.S.C. § 1487.

The third factor is whether a private right of action would be consistent with the underlying purposes of the legislative scheme. While enforcement is provided for in § 1487, it has been argued that the additional enforcement resulting from allowing passengers in situations analogous to Marco's to sue privately would create additional incentive for compliance with the statute. However, while the approach of the court in *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1050 (5th Cir.1982) (denying that substantial enforcement power is added to the legislative scheme by granting private rights to passengers) is not without merit, we decline to accept the conclusion that a private right should be denied upon application of this factor in the circumstances of this case.

The fourth factor, i.e., whether an alternative state remedy is available to plaintiff, is favorable to Marco because there is no state remedy analogous to what he argues for under The Federal Aviation Act.

■ Despite the factor in his favor, we conclude that no private right of action exists under this subsection of the statute. The absence of an alternative state remedy is insufficient to meet the *Cort v. Ash* test. Accordingly, British Airways' motion to

---

**3.** First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? .... *Cort v. Ash, supra,* 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted, emphasis in original).

dismiss count seven of the complaint is granted.

For the foregoing reasons, British Airways' motion for dismissal is granted as to counts one, two, three, six and seven of the complaint and is denied with respect to counts four and five.

It is so ordered.