## GOOCH *v.* OREGON SHORT LINE RAILROAD COMPANY.

CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 90. Argued January 13, 16, 1922.—Decided February 27, 1922.

1. An agreement in a drover's railroad pass, made pursuant to a tariff filed with the Interstate Commerce Commission and conditioning his right to recover for personal injuries upon the giving of a written notice of claim, within thirty days after injury, to the general manager of the carrier upon whose line the accident occurs, is valid, at least where his injuries do not disable him from complying with the condition. P. 24.

2. Actual knowledge on the part of the railroad's employees is no excuse for not giving the notice. P. 24.

3. The action of Congress in fixing not less than 90 days for giving notice of claims in respect of goods (Cummins Amendment, March

4, 1915, c. 176, § 1, 38 Stat. 1196), is not a declaration of public policy against allowing a less, though reasonable, time in the case of personal injuries.   P. 24.
264 Fed. 664, affirmed.

CERTIORARI to a judgment of the Circuit Court of Appeals affirming a judgment of nonsuit in an action in the District Court for personal injuries.

Mr. *J. H. Peterson*, with whom *Mr. T. C. Coffin* was on the brief, for petitioner.

Mr. *George H. Smith*, with whom *Mr. Henry W. Clark* was on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action for personal injuries caused by a collision on the defendant's road.   The plaintiff, the petitioner, shipped some cattle from Bancroft in Idaho to Omaha in Nebraska and got a drover's pass to go with them as caretaker, free from charge other than that made for carrying the cattle.   In consideration of the pass the plaintiff agreed that the carrier should not be liable for any injury to him upon the trip unless he or his personal representative should within thirty days after the injury give notice in writing of his claim to the general manager of the carrier on which line the accident occurred.   This agreement was required in pursuance of a regulation that was part of the defendant's tariff duly filed with the Interstate Commerce Commission.   The collision happened on November 24, 1917, and the plaintiff was in a hospital for about thirty days under the care of a doctor employed by the defendant, but was not disabled from giving the notice.   He failed to give it, however.   The District Court directed a non-suit and its judgment was affirmed by the Circuit Court of Appeals.   264 Fed. 664.   A writ of certiorari was granted by this Court.   254 U. S. 623.

The only question is whether the requirement of notice in writing was valid. The railroad company does not contend that it could have exonerated itself altogether from liability for negligence, *Norfolk Southern R. R. Co. v. Chatman,* 244 U. S. 276, but argues that a stipulation for written notice within a reasonable time stands on a different footing, and of this there is no doubt. *Southern Pacific Co. v. Stewart,* 248 U. S. 446, 449, 450. *St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird,* 243 U. S. 592, 602, *et seq.* We perceive nothing in the form of the notice required to invalidate the requirement. It would have been sufficiently complied with if addressed to the railroad company, or to the general manager, care of the railroad company. Of course too, actual knowledge on the part of employees of the company was not an excuse for omitting the notice in writing. *St. Louis, Iron Mountain & Southern Ry. Co. v. Starbird,* 243 U. S. 592. The doubt that led to the granting of the writ of certiorari was whether the prohibition of a requirement fixing less than ninety days for giving notice of claims in respect of goods established a public policy that would affect the present case. Act of March 4, 1915, c. 176, § 1, 38 Stat. 1196. For although courts sometimes have been slow to extend the effect of statutes modifying the common law beyond the direct operation of the words, it is obvious that a statute may indicate a change in the policy of the law, although it expresses that change only in the specific cases most likely to occur to the mind. *Johnson v. United States,* 163 Fed. 30, 32.

We are satisfied, however, that in this case the requirement was valid and that the statute referred to should not affect what in our opinion would be the law apart from it. The decisions that we have cited show that the time would have been sufficient, but for the statute, in respect of damage to goods, and the reasons are stronger to uphold it as adequate for personal injuries. A record

is kept of goods, yet even as to them reasonably prompt notice is necessary as a check upon fraud.   There is no record of passengers, and the practice of fraud is too common to be ignored.   Less time reasonably may be allowed for a notice of claims for personal injuries than is deemed proper for goods, although very probably an exception might be implied if the accident made notice within the time impracticable.   The statute cannot be taken to indicate a different view.   On the contrary it is impossible to suppose that Congress when it was dealing with notices of claims, and even with the claims of passengers for baggage, Act of August 9, 1916, c. 301, 39 Stat. 441, 442, should not have thought of their claims for personal injuries, and, as it passed them by, we must suppose that it was satisfied to leave them to the Interstate Commerce Commission and the common law.   See *Galveston, Harrisburg & San Antonio Ry. Co.* v. *Woodbury,* 254 U. S. 357, 359.   *Chicago,. Rock Island. & Pacific Ry. Co.* v. *Maucher,* 248 U. S. 359, 363.   The fact that the form prescribed by the Interstate Commerce Commission in 1921· is silent upon the subject cannot affect the result.

*Judgment affirmed.*

MR. JUSTICE PITNEY was absent and took no part in the decision.

MR. JUSTICE CLARKE, with whom concurred the CHIEF JUSTICE and MR. JUSTICE McKENNA, dissenting.

On November 24, 1917, petitioner, Gooch, when a passenger in the caboose attached to the train in which respondent company was carrying a carload of cattle for him, was seriously injured by a collision with another train.   Gooch was traveling on what has long been known as a "Drover's Pass," which it is admitted in the answer (as it must be, *Norfolk Southern R. R. Co.* v. *Chatman,* 244 U. S. 276), entitled him to the rights and protection

of a passenger for hire. It is also either admitted, or not denied, that Gooch was so injured that in about an hour and a half after he was hurt agents of the company took him to a hospital about forty miles from the scene of the accident, where he was under the care of a physician employed by respondent for about thirty days, until he left the hospital, but he returned for two treatments by the company physician and was finally discharged by him on January 15, 1918 (52 days after the accident). Five days after Gooch entered the hospital, and while he was still in bed under the care of the company's physician, the claim adjuster of the company called upon him and asked him "if he was ready for a settlement." To this Gooch replied that, "He was not in a condition to talk with him; that he was not ready for a settlement." About ten days later, the claim agent called on him again at the hospital and found him sitting up in a wheeled chair and a conversation "similar to the first one was held." But his case was dismissed below and that judgment is affirmed by this court because he did not notify the company in writing within thirty days of the accident that he would claim damages for his injuries thus negligently caused.

The company alleged in its answer, and it is not denied, that pursuant to the provision of an effective tariff, when he delivered his cattle for transportation, Gooch signed a written stipulation that no claim for personal injury caused by its negligence should be valid or enforcible against the company unless notice in writing was given to the general manager thereof within thirty days after injury occurred.

It was admitted that the petitioner did not give the required notice in writing and the judgment of this court is that the rule requiring it was a valid and reasonable rule and that it must be enforced by affirmance of the judgment of the court below, notwithstanding the intimate knowledge which the company so certainly had of Gooch's

CLARKE, J., TAFT, Ch. J., and McKENNA, J., dissenting.

injuries from an hour and a half after the accident, when it sent him to a hospital.

From this conclusion of the court I dissent: (1) Because such a rule, as to property claims, has twice within six years been specifically declared by acts of Congress to be contrary to a public policy which I think it is the duty of this court to recognize and accept with respect to injuries to passengers, and (2) because in practice the rule is gravely unjust and discriminatory and therefore unreasonable.

Of these in the order stated.

First.  The petitioner claims the rule is unreasonable and void under *Boston & Maine Railroad* v. *Piper,* 246 U. S. 439, but the court holds it reasonable on two grounds: (1) Because the decisions of this court show that the time for notice was sufficient, and (2) because it is necessary to protect carriers from fraudulent claims.

It is true that like, and even shorter, limitations with respect to claims for property were sustained under special circumstances in the two cases cited in the opinion of the court and in several others, but those cases arose before the Cummins Amendment to the Interstate Commerce Act (38 Stat. 1196), which, after providing for the issuing of a receipt or bill of lading for property received for transportation by a carrier, contains this provision:

" *Provided further,* That it shall be *unlawful* for any such common carrier to provide by rule, contract, regulation, or otherwise a shorter period for giving notice of claims than ninety days and for the filing of claims for a shorter period than four months, and for the institution of suits than two years: *Provided, however,* That if the loss, damage, or injury complained of was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of claim nor filing of claim shall be required as a condition precedent to recovery."

The first proviso thus quoted was a second time re-enacted, in terms, (with an addition with respect to computations of time named therein) in the carefully considered Transportation Act, approved February 28, 1920, c. 91, 41 Stat. 456, 494, and the second proviso was left unchanged by that act.

These two acts of Congress providing that any rule, regulation or contract for limitation of notice to less than ninety days, shall be unlawful, are such unmistakable declarations of public policy as to a shorter notice limitation, under any circumstances, that in my judgment it should be applied to claims for personal injury, even though the statute, in terms, applies only to damages to property, unless there are cogent reasons for distinguishing the two classes of claims from each other. *Congress should not have a ninety-day reasonable standard in such matters and this court a thirty-day standard.*

The opinion of the court gives this as a sufficient reason for such distinction:

"The decisions that we have cited show that the time would have been sufficient, but for the statute, in respect of damage to goods, and the reasons are stronger to uphold it as adequate for personal injuries. A record is kept of goods, yet even as to them reasonably prompt notice is necessary as a check upon fraud. There is no record of passengers, and the practice of fraud is too common to be ignored."

With all deference, I submit that the reason thus given is unsound, because the likelihood is much greater that fraudulent claims will be made for injuries to goods than to persons, for the reason that most goods are packed for shipment and whether they are damaged or not cannot be discovered until they are unpacked after having left the custody of the carrier, but it must be rare indeed that a passenger can be injured except in the presence of some one or more of the carrier's agents. Such living and alert

witnesses are a much better protection against fraud than the indefinite and hurried record that is kept of goods.

In addition, the fact that cases involving notice limitations with respect to goods have been appearing frequently in this court for fifty years,—ever since *Express Co.* v. *Caldwell*, 21 Wall. 264, was decided—while counsel agree that the case we are considering is the first of its kind with respect to passengers to find its way here or, so far as they can discover, into any court, is very strong evidence that fraudulent claims for damages to goods are more frequent than for injury to persons. If the carriers had needed and had used such limitations on personal injury claims as much as they needed and used them as to claims for damages to goods, some of them would have found their way into reported cases long ere this. As a matter of fact, however, this notice limitation upon passenger injury claims is a recent innovation. It appears for the first time in the livestock contract of the respondent, effective November 2, 1915,—as if in defiant response to the Cummins Amendment of the preceding March. And in the Uniform Live Stock Contract, prescribed by the Interstate Commerce Commission in its report of October 21, 1921, no such limitation is permitted. Interstate Commerce Reports, *In re Domestic Bill of Lading and Live Stock Contract.* Appendix F. Under this prescribed form of contract, the latest word on the subject, a thirty-day limit, such as the court is approving, would be as unlawful as it would have been under the statute had it been applied to a claim for injury suffered by Gooch's cattle in the same accident in which he was injured.

These considerations answer also the suggestion in the opinion of the court that Congress must have considered claims by passengers when considering claims for property and have decided that they deserved different treatment. Such a limitation on passenger claims had never

been heard of at that time, but we may be sure it will be found in every railroad ticket promptly upon the publication of the court's opinion in this case, unless prohibited by statute.

This court is passing for the first time upon such a rule as we have here, and believing that no sound reasons have been given for distinguishing between notice requirements for property and for passenger claims, I think it is the duty of the court to accept the rule of public policy prescribed by Congress and to apply it to personal injury claims by declaring this thirty-day rule too short to be reasonable and that it is therefore void under the *Piper Case, supra.*

Second. That the rule is unjust and discriminatory, and therefore unreasonable, is very clearly shown by the operation of a like rule in freight cases.

In *In the Matter of Bills of Lading,* 29 I. C. C. 417, 419, and *In re the Cummins Amendment,* 33 I. C. C. 682, 691, the Interstate Commerce Commission says that, while the uniform bill of lading had long contained *a four months' limitation* for presenting damage claims for freight, no effort had been made by carriers generally to enforce it until the *Croninger Case* was decided in January, 1913 (226 U. S. 491), but that in December of that year they began to enforce it literally and thereby " created multitudes of unjust discriminations." Only about one year of such enforcement was necessary to cause the enactment of the Cummins Amendment on March 4, 1915, which made an end of the matter where property was damaged in transit by negligence, and in any case rendered a limitation to less than ninety days unlawful.

That a notice rule so short as thirty days must result in discrimination seems to me clear, also, because of that characteristic of human nature, not sufficiently taken into account by many courts. Persons and property are

usually transported so safely by rail that thought of damage rarely enters the mind of the occasional shipper or traveler, and from this it results that rules, such as we have here, are not read, or if read are not understood, couched, as they usually are, in forms of expression about the meaning of which courts are in constant disagreement, with the result that, while the large shippers know of and keep within such rules and recover their losses, for the occasional small shippers they serve as a trap in which they are often caught and ruined. The Cummins Amendment is the protest of the country against the discrimination and hardship which many federal and state court decisions show resulted all over the country, from the enforcement of such a rule as to property claims.

To these reasons for holding the rule in this case unjust and discriminatory must be added the certainty, inherent in its form, that if enforced it will be an agency of grave injustice.

Not only is the requirement unusual and unreasonable that the notice shall be given only to the general manager of a great system of railway, remote and unknown as he must be to most of the patrons of the road, but, as a shipper seldom accompanies his property—a drover is almost the only instance in which he does—he is usually at least in physical condition to make prompt claim if his property is damaged, but many men are so badly injured in railway accidents that they are wholly incapable of making claim in writing within thirty days, and to prepare the way for a law suit is the last thought of a man who is seriously injured and suffering. It is true that the rule considerately permits the claim to be made by " the heirs and personal representatives " of one who may be killed—but if, unfortunately, he should die toward the end or very near the end of the thirty days, this astutely worded rule would cut out his dependents from all right

to recover. The rule is a novel and cunning device to defeat the normal liability of carriers and should not be made a favorite of the courts.

Believing, as I do, for the reasons thus stated, that the thirty-day notice really is much more unjust when applied to passenger than to property claims and also because its application will work as grave discrimination and injustice in other cases as it so palpably does in this case, I think the rule of public policy declared in the Cummins Amendment should be followed and that the judgment of the Circuit Court of Appeals should be reversed.