**R.T.A. CORPORATION, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION,
Defendant.**

**No. 83 Civ. 8571 (MJL).**

United States District Court,
S.D. New York.

July 26, 1984.

Albert E. Fershing, by David S. Steinberg, New York City, for plaintiff.

Michael J. Siris by James M. Keneally, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

In this action plaintiff, R.T.A. Corporation ("R.T.A."), seeks to recover $75,000.00 from defendant, Consolidated Rail Corporation ("Conrail"), for alleged damage sustained by a shipment of RCA products of which R.T.A. was the consignee.

Plaintiff initially filed suit in the Supreme Court of the State of New York against Conrail, alleging that Conrail, through its negligence, breach of bailment and breach of the terms of the bill of lading governing the shipment, caused the alleged damage to the merchandise. On or about November 30, 1983, this action was removed, on Conrail's petition, from the Supreme Court of the State of New York to the United States District Court for the Southern District of New York.

Defendant is a railroad subject to the provisions of the Interstate Commerce Act, 49 U.S.C. § 1 et seq., and the regulations promulgated thereunder by the Interstate Commerce Commission ("ICC") 49 C.F.R. § 1, et seq.[1]

Before the Court is defendant's motion for an order pursuant to Fed.R.Civ.P. 12(b)(6) granting dismissal due to plaintiff's failure to state a claim upon which relief may be granted. Defendant argues that the action is time-barred due to plaintiff's failure to file a proper written claim with defendant as required by Section 2(b) of the Uniform Domestic Straight Bill of Lading which governed the short-form Straight Bill of Lading pursuant to which the shipment in question was transported.

Both plaintiff and defendant submitted to the Court affidavits and other evidence in addition to the pleadings.[2] Fed.R.Civ.P. 12(b) provides that "if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 ..." In view of the foregoing, this Court shall treat defendant's 12(b)(6) motion as a motion for summary judgment.

### FACTS

It is undisputed that on or about May 28, 1982, defendant delivered by rail a ship-

---

**1.** Title 49 of the U.S.C. was revised by Public Law 95–473, October 17, 1978 into 49 U.S.C. § 10101, et seq.

**2.** In fact the parties submitted statements pursuant to Local Rule 3(g).

ment of RCA products to plaintiff in Albany, New York. Said shipment had been transported by defendant from Bloomington, Indiana pursuant to a short-form Straight Bill of Lading. The bill of lading incorporated the provisions of the Uniform Domestic Straight Bill of Lading.

Defendant asserts that plaintiff rejected the shipment due to the alleged damage to the shipment. Plaintiff contends that it accepted the shipment with damage noted under protest.

Both parties agree that following the delivery, plaintiff sent to W.F. Mahoney, an employee of defendant, a letter, dated September 28, 1982, which reads as follows:

"Dear Mr. Mahoney:

Due to your negligence, a loaded trailer was received with damage to the trailer itself, as well as the cargo inside. Kindly notify your insurance carrier.

Very truly yours,

Charles Wagar

Vice President, Operations."

They also agree that during the nine-month period following the date of delivery, the above-quoted letter was the only correspondence defendant received from plaintiff or any of its employees.

Plaintiff claims, and it appears to be undisputed, that on June 4, 1982, over three months before plaintiff sent its letter to defendant, one of defendant's employees inspected the shipment in the presence of employees of plaintiff and filled out an inspection report.[3] Plaintiff further claims that not long after the inspection the same employee informed Charles Wagar, plaintiff's then vice-president, operations, that improper packing and/or storing by the shipper, RCA, caused the damage and that defendant would therefore decline any claim made upon it. Mr. Wagar explains by way of affidavit, that originally, he did not file a written claim against Conrail because he considered the remarks of defendant's unidentified employee to constitute a disallowance of the claim. However,

at the behest of R.T.A.'s adjuster, Wagar sent the letter dated September 28, 1982 to defendant. Defendant's Mr. Mahoney returned the letter to plaintiff after informing plaintiff by telephone that the claim had already been disallowed.

On this motion, defendant contends that the September 28, 1982 letter sent by Wagar of R.T.A. to Mahoney of Conrail did not conform to the ICC's requirements for a valid written notice of claim as spelled out in 49 C.F.R. § 1005.2 in that it failed to: (1) sufficiently identify the shipment in question, (2) properly assert liability for the damages alleged, and (3) make a claim for a specified or determinable amount of money.

Plaintiff argues that the September 28 letter was legally sufficient and that because it was received by defendant within nine months after delivery of the property, plaintiff has complied with § 2(b) of the Uniform Domestic Straight Bill of Lading. It contends that under the relevant case law courts are to accord writings a liberal construction when determining whether a proper claim has been made. Plaintiff also insists that defendant had sufficient information to process a claim as evidenced by the facts that the Conrail inspector was able to carry out an inspection and to orally disallow the claim after the inspection.

Plaintiff further argues that even if the letter did not meet the ICC requirements for a notice of claim, defendant is estopped from asserting noncompliance with such requirements. This argument is twofold: first, that plaintiff relied upon the alleged statements of the unidentified Conrail inspector, and second, that defendant returned the September 28 letter to plaintiff without advising plaintiff to file a new or a corrected letter.

Defendant argues that it should not be estopped from pleading plaintiff's failure to file a valid notice of claim as a defense. It contends that it made no misleading mis-

---

3. Plaintiff claims these facts in its Counter Statement of Facts pursuant to Rule 3(g) and they are not contradicted in Defendant's Reply Memorandum. In addition, a copy of the inspection report is annexed to plaintiff's Counter Statement of Facts.

representation to plaintiff and that it never told plaintiff that a statement of claim need not be filed. Moreover, defendant argues that R.T.A. should have known of its responsibilities under § 2(b) and that it cannot reasonably rely on a verbal claim rejection by an employee of the carrier to estop that carrier from raising a limitations period defense.[4]

## LEGAL DISCUSSION

### A. Standard of Review

■ . On a motion for summary judgment, the Court does not act as a trier of fact, but on the record before it, determines whether there are any genuine issues of material fact. *FLLI Moretti Cereali v. Continental Grain Co.,* 563 F.2d 563, 566 (2d Cir.1977). Moreover, it must resolve any doubts in favor of the party opposing the motion. *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978). "Summary judgment is a remedy which must be applied when the Court is convinced as a matter of law that the suit can have only one possible outcome." *Reliance Insurance Co. v. Barron's,* 442 F.Supp. 1341, 1343–44 (S.D.N.Y.1977).

In the case at bar there are no genuine issues of material fact to be tried. The sole disputed fact is whether plaintiff accepted or rejected the damaged shipment. That point of contention is not material to the notice of claim issue which we find to be dispositive of this case. Therefore, for the reasons set forth below, summary judgment will be granted in favor of the defendant.

### B. The Sufficiency of Plaintiff's Statement of Claim

■ As noted above, the shipment at issue herein moved pursuant to a short-form Straight Bill of Lading which by its terms, is governed by the provisions of the Uniform Domestic Straight Bill of Lading. Section 2(b) of the Uniform Domestic Straight Bill of Lading provides that in order to recover for damage incurred in the delivery of cargo, the shipper or consignee must file a written claim with the carrier within nine months after delivery of the property.[5]

The minimum requirements for a notice of claim are set forth in 49 C.F.R. § 1005.-2.[6] Although the regulations state only

---

**4.** Defendant cites 49 C.F.R. § 1005.5 in support of its argument that a carrier may not decline a claim orally:

> (a) Each carrier subject to the Interstate Commerce Act which receives a written or electronically transmitted claim for loss or damage to baggage or for loss, damage, injury, or delay to property transported shall pay, decline, or make a firm compromise settlement offer *in writing or electronically* to the claimant within 120 days after receipt of the claim by the carrier.... (emphasis added)

In addition, defendant points out that the two year and one day limitation period for the filing of a suit against a carrier, as specified by § 2(b) of the bill of lading, begins "when notice is given *in writing by the carrier*" (emphasis added) that the claim in question has been rejected.

**5.** Section 2(b) states:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, *within nine months after delivery of the property* (or in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine

months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. *Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.* [Emphasis added]

**6.** The provisions pertinent to this case are as follows: § 1005.2 Filing of claims.

> (a) *Compliance with regulations.* A claim for loss or damage ... to cargo, shall not be voluntarily paid by a carrier unless filed, as provided in paragraph (b) of this section, ... within the specified time limits applicable thereto and as otherwise may be required by law, the terms of the bill of lading or other contract of carriage, and all tariff provisions applicable thereto.
>
> (b) *Minimum filing requirements.* A written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed with a proper

that a claim for loss or damage to cargo shall not be paid *voluntarily* unless the notice requirements are complied with, the Second Circuit has held that "the regulations provide the appropriate standard for assessing the sufficiency of all claims irrespective of the way they may subsequently be resolved or adjudicated." *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 904 (2d Cir.1980), *cert. denied*, 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981).[7] Accordingly, we must determine whether plaintiff's letter of September 28, 1982 satisfied the three requirements of § 1005.2.

The second requirement of § 1005.2, that the claimant must assert the carrier's liability for the damage, appears to be met in this case. The September 28 letter can reasonably be interpreted as asserting liability, for it states, "[d]ue to *your* negligence, a loaded trailer was received with damage.... Kindly notify *your* insurance carrier." (emphasis added).

The first and third requirements of § 1005.2 pose more serious problems for plaintiff.

> carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage....

**7.** The Second Circuit is not alone in its view that the ICC regulations at 49 C.F.R. § 1005 apply to litigated claims for loss or damage against interstate carriers. *See Perini-North River Associates v. Chesapeake and Ohio Railway*, 562 F.2d 269, 271 n. 2, 274 (3rd Cir.1977); *Foster Wheeler Energy Corp. v. Daily Express, Inc.*, 485 F.Supp. 268, 271–72 (M.D.Pa.1980); and *Venetian Terrazzo Co. v. Chicago, Rock Island & Pacific Railroad*, 453 F.Supp. 1021, 1024 (E.D.Mo.1978); *Henry Pratt Co. v. Stor Dor Freight Systems*, 416 F.Supp. 714, 715 (N.D.Ill.1975). However, the Seventh Circuit has held otherwise. *Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441, 445 (7th Cir.) *cert. denied*, 449 U.S. 837, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980). The word "voluntary" in subsection (a) led the *Wisconsin Packing* court to conclude that the regulation was intended to govern only voluntary claim settlements and not judicial resolutions of

The first requirement of the regulation is that the writing contain "facts sufficient to identify the baggage or shipment ... of property involved." Plaintiff's letter states merely that "a loaded trailer was received with damage to the trailer itself, as well as the cargo inside." Neither the date of delivery, nor the trailer number, nor the contents of the trailer are given. Nevertheless, plaintiff argues that defendant had adequate information to process a claim. Plaintiff points out that the defendant sent out an inspector before the letter was sent and that the inspector orally disallowed the claim. Although it is true that some courts have held that actual knowledge by the carrier can make up for deficiencies in a claim for damages (*See, e.g., Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441 (7th Cir.1980) (en banc); *Stearns-Roger Corp. v. Norfolk & Western Railway*, 356 F.Supp. 1238 (N.D.Ill.1973); *Loveless v. Universal Carloading & Distributing Co.*, 225 F.2d 637 (10th Cir.1955)), the regulations, which are

claims. The Court held that the validity of a disputed claim is to be assessed under the case law that had developed before the ICC issued the regulations. The case law standard follows liberal guidelines to determine whether a claim is legally sufficient. *Id.* at 444. *See also Georgia, Florida & Alabama Ry. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916); *American Synthetic Rubber Corp. v. Louisville & Nashville Railroad*, 422 F.2d 462, 468 (6th Cir. 1970); *M.W. Loveless v. Universal Carloading & Distributing Co.*, 225 F.2d 637, 639 (10th Cir. 1955); *Thompson v. McCarrick*, 205 F.2d 897, 900 (5th Cir.1953). To date, the Seventh Circuit has been the only circuit to explicitly state that the regulations are inapplicable to cases involving litigated claims. *Calpro Co. v. Consolidated Engineering Co. of Georgia*, 502 F.Supp. 707, 712 (N.D.Ga.1980). However, subsequent to the promulgation of the regulations, several courts have totally ignored their existence and have continued to apply the case law standard. *See Atchison, Topeka and Santa Fe Railway v. Littleton Leasing and Investment Co.*, 582 F.2d 1237, 1240 (10th Cir.1978); *Miller v. Aaacon Auto Transport, Inc.*, 447 F.Supp. 1201, 1204 (S.D.Fla. 1978); *Conagra, Inc. v. Burlington Northern, Inc.*, 438 F.Supp. 1266 (D.Neb.1977); *MGD Graphic Systems Americas Co. v. Acme Fast Freight, Inc.*, 437 F.Supp. 10 (N.D.Ill.1977); *Stearns-Roger Corp. v. Norfolk & Western Railway*, 356 F.Supp. 1238 (N.D.Ill.1973).

followed in the Second Circuit, make no exceptions to compliance with any of their provisions in the case of actual knowledge by the carrier. *See Pathway Bellows, Inc.,* 630 F.2d 900 (Court held that even though defendant railroad had complete knowledge of all pertinent facts, such knowledge did not dispense with the requirements set forth in the ICC regulations). It is interesting to note that in its Memorandum of Law, plaintiff completely fails to mention the regulations and their applicability to the case at bar.

Even assuming the letter satisfied requirement # 1, plaintiff's claim still would not qualify as legally sufficient, for it undoubtedly fails to meet the third requirement, *i.e.* that the writing make a claim for payment of "a specified or determinable amount of money." In *Bobst Division of Bobst Champlain, Inc. v. IML-Freight, Inc.,* 566 F.Supp. 665 (S.D.N.Y.1983), this Court, in an opinion by Judge Haight, found an attempted claim letter to be insufficient under the regulations, on this very ground of omission of a specified or determinable amount of damage. The letter in *Bobst* stated, "The estimated amount of damages is approximately $100,000.00." *Id.* at 666. Judge Haight held, based on § 1005.2(d), that a claim for an "uncertain amount" cannot be regarded as constituting compliance with the third requirement of subsection (b). *Id.* at 669.[8] Insofar as this third requirement is concerned, the letter in the instant case is far more deficient than the one in *Bobst,* for it makes absolutely no mention of damages. The reasonableness of the *Bobst* decision is plain. If damages are sought it is for the claimant to say exactly what it seeks, rather than for the carrier, against its self-interest, to say what the claimant deserves.

### C. *Estoppel*

As noted above, plaintiff argues that even if the letter does not constitute a legally sufficient claim, defendant should be estopped from asserting plaintiff's failure to file a valid claim.

■ For plaintiff to prevail on an estoppel theory,[9] it would have to prove that defendant's employees made misleading representations and that plaintiff failed to file a timely claim as a result of its reliance on those representations. *Foster Wheeler Energy Corp. v. Daily Express, Inc.,* 485 F.Supp. 268, 272 (M.D.Penn.1980). Throughout our analysis, we must be mindful that, "[e]stoppel, within the context of the mandatory, statutory and regulatory scheme, should not be lightly found." *Bobst,* 566 F.Supp. at 669.

■ Plaintiff does not claim that any employee of the defendant represented to it that a proper statement of claim need not be filed. Therefore, this case is easily distinguishable from *Perini-North River Associates,* 562 F.2d 269 where the defendant's employee had told plaintiff that since an inspection report had already been prepared, there was no need to file anything more. There, the Third Circuit held that the defendant was estopped from asserting the notice of claim requirement as a defense. In the instant case, Conrail's unidentified inspector stated, at most, that Conrail would reject a claim by plaintiff and Conrail's Mr. Mahoney stated that the claim had been rejected already. Plaintiff argues that the remarks of defendant's employees disallowing its claim, led it to infer that it was unnecessary to file a written claim. However, such an inference would have been unreasonable as a matter

**8.** Section 1005.2(d) reads as follows:

*Claims filed for uncertain amounts.* Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier against whom such a claim is filed shall determine the condition of the baggage or shipment involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. *It shall not, however,*

*voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.* (emphasis added).

**9.** *Pathway Bellows,* 630 F.2d at 905 n. 10 suggests that estoppel is available as a defense in the Second Circuit. *Accord Bobst,* 566 F.Supp. at 669–70.

of law. *Pathway Bellows* held, at least implicitly, that a claimant must comply with the requirements of § 1005.2(b), even if a defendant refuses to settle a claim voluntarily and judicial resolution of the claim becomes necessary. Therefore, the representation of the defendant, rejecting plaintiff's claim, had no bearing on plaintiff's legal obligations.

 Moreover, plaintiff cannot seriously contend that it failed to file a timely claim as a result of its reliance on the alleged remarks of Conrail's inspector, since after those remarks were made and before the nine month period elapsed, plaintiff did attempt to file a written claim. Although plaintiff may initially have been influenced by the inspector's comments not to file a claim, the advice of its adjuster changed this inclination. As defendant succinctly puts it, "... R.T.A. claims it did (the September 28th claim letter) the very thing that estoppel should excuse it from not having done." Defendant's Reply Memorandum in Further Support of its Motion Under Rule 12(b) to Dismiss Plaintiff's Complaint as Time-Barred and in Opposition to Plaintiff's Memorandum, at 15.

In its brief, plaintiff implies that defendant owed a duty to plaintiff to inform it that the September 28 letter was legally insufficient as a notice of claim. ("Conrail did not tell Mr. Wagar to file a different form, or to supply additional information. The phone call simply stated that the claim would not be paid." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Cause of Action for Failure to State a Claim Upon Which Relief Can Be Granted, at unpaginated 4.) Defendant cannot be required to play the role of plaintiff's attorney. R.T.A. and Conrail are parties which deal with each other at arms length. In order to make sure that its efforts complied with the regulations, the burden was on plaintiff to seek competent legal advice.

## CONCLUSION

Where a shipment has been damaged in transit, ideally, whoever is responsible should pay. Yet he who seeks compensation must, absent any countervailing reasons, comply with the agreed upon procedure to recovery. As Chief Judge Waterman explained in *Pathway Bellows*, 630 F.2d at 903 n. 5:

> The minimum filing requirements appear to call for no more information than one ordinarily would expect a claim for damages to contain, and compliance with these requirements is neither onerous nor unreasonable. To the extent that carriers may escape liability, such "windfalls" may be properly traced, not to the existence of the regulations, but to shippers' unexcused failure to comply with a reasonable condition contained in bills of lading.

*See also Loveless,* 225 F.2d at 642 (Wallace, J., dissenting.)

R.T.A. failed to comply with the contractually imposed condition precedent to maintain an action to recover damages. Therefore, Conrail is entitled to prevail on its motion for summary judgment.

It Is So Ordered.