**ALLIANZ–ULTRAMAR CIA, BRASI-LEIRA DE SEGUROS, Plaintiff,**

v.

**NORFOLK AND WESTERN RAILWAY COMPANY, Defendant.**

Civ. A. No. 87–2–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

July 16, 1987.

Richard I. Gulick, Norfolk, Va., for plaintiff.

Gerard P. Rowe, Norfolk, Va., for defendant.

## OPINION AND ORDER

KELLAM, Senior District Judge.

Seeking to recover for a paper roller damaged in shipment from Sao Paulo, Brazil to West Point, Virginia, plaintiff, an insurance company which insured the paper roller for the shipper and paid the damage claims, instituted this action against defendant railroad. Defendant has filed a motion for summary judgment to which plaintiff has replied. The parties agree there are no disputed facts insofar as the basis of the motion for summary judgment is concerned.

The roller was received by the Railroad on January 7, 1986, at NIT, and transported to its Portlock Yard in Chesapeake. At the Chesapeake location the employees of the railroad discovered damages to the roller and brought this to the attention of the consignee and shipper's agent. After shipper/consignee inspected the roller, it directed it be sent to Salisbury, North Carolina for repairs. Shipper's agent had a survey conducted in mid January 1986 which was completed in March. The amount of the costs of repair was known to shipper/consignee in April, but none of this information was furnished to defendant.

A notice of a preliminary claim was sent by shipper's agent to the railroad on January 13, 1986. That notice set forth:

This cargo shifted while in-transit from NIT to Portlock. Shaft pushed outside the case, extent of damage not known at this time.

This is a formal notice that claim will be filed by the Importer/Consignee when full particulars are ascertained.

Railroad had actual notice of damage to the roller. Plaintiff attached to his response to defendant's motion for summary

judgment a copy of a report from Railroad's "District Freight Claims Representative" to Railroad's "Manager Field Services" dated January 30th, 1986. However, other than the notice from Agent of January 13, 1986, no written notice was given to Railroad until this suit was filed on January 2nd, 1987.

A copy of the bill of lading for the shipment, affidavits and other papers are filed with the motion for summary judgment.

The Interstate Commerce Commission is vested with jurisdiction over the rail shipment in question, 49 U.S.C. § 10501, and common carriers providing transportation are required to issue a bill of lading, 49 U.S.C. § 11707, as was done in this case. Regulations promulagated by the Interstate Commerce Commission and the provisions of the Bill of Lading require plaintiff to comply with the time requirements for the filing of a claim with the carrier as set out in the Bill of Lading. *See* 49 C.F.R. Part 1005 (1986). In particular, 49 C.F.R. § 1005.1 makes the regulation applicable to the processing of claims for damages to property being transported by a common carrier in interstate or foreign commerce. Section 1005.2(a) states that a claim for damage shall not be voluntarily paid by a carrier unless filed as provided in paragraph (b) within the specified time limits applicable and the "terms of the bill of lading or other contract of carriage." The minimum filing requirement as set out in subparagraph (b) is a written or electronic communication (when agreed to by the carrier and shipper or receiver involved) from a claimant, filed within the time limits specified in the bill of lading and (1) containing facts sufficient to identify the shipment; (2) asserting liability for the damage, and (3) making claim for payment of a specified amount of money. Subparagraph (c) sets forth that bad order reports, appraisal reports of damage, negotiations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carrier, whether the extent of the damage is indicated in dollars and cents or otherwise "shall, standing alone, not be considered by carriers as sufficient to comply with mini-

mum requirements." Section 1005.3 requires the carrier to acknowledge receipt in writing of a proper claim within 30 days, and pursuant to section 1005.4 to promptly investigate the claim, and make some disposition of it within 120 days after receipt.

The Supreme Court has recognized that "the Interstate Commerce Commission has discretion to fashion remedies in furtherance of its statutory responsibilities." *Interstate Commerce Commission v. American Trucking Associations, Inc.,* 467 U.S. 354, 355, 104 S.Ct. 2458, 2459, 81 L.Ed.2d 282 (1984). Its authority under the Act "is not bounded by the powers expressly enumerated in the Act, ... [it] has discretion to take actions that are 'legitimate, reasonable and direct[ly] adjunct to the Commission's explicit statutory power.'" 467 U.S. at 365, 104 S.Ct. at 2464.

In this case the bill of lading which is a uniform straight bill of lading sets forth in Section 2(b):

> As a condition precedent to recovery, *claims must be filed in writing* with the receiving and delivering carrier, or carrier issuing this bill of lading or carrier on whose line the loss, damage, injury or delay occurred, *within nine months after delivery of the property* ... and suits shall be instituted against any carrier only within two years and one day from the date when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any parts thereof specified in the notice. *Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.* [emphasis added].

It is clear these provisions of the bill of lading are within the limits of law, as well as the regulation of the Interstate Commerce Commission.

By the great weight of authority, compliance with the written notice requirement of section 2(b) of the bill of lading is mandatory, and verbal notice and even actual notice on the part of the carrier's employees will

not suffice. *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981); *General Electric Company v. Brown Transport Corporation,* 597 F.Supp. 1258 (E.D.Va.1984). In addition to those cases cited and discussed in *Brown, supra,* the following additional cases support that holding. *Chesapeake & Ohio Ry. Co. v. A.F. Thompson Mfg. Co.,* 270 U.S. 416, 46 S.Ct. 318, 70 L.Ed. 659 (1926); *Gooch v. Oregon Shortline R. Co.,* 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443 (1922); *Baltimore & Ohio R. Co. v. Leach,* 249 U.S. 217, 39 S.Ct. 254, 63 L.Ed. 570 (1919); *Southern Pacific v. Stewart,* 248 U.S. 446, 39 S.Ct. 139, 63 L.Ed. 350 (1919); *Erie Railroad Co. v. Stone,* 244 U.S. 332, 37 S.Ct. 633, 61 L.Ed. 1173 (1917); *Highlands Insurance Co. v. Trinidad and Tobago Airways Corp.,* 739 F.2d 536 (11th Cir.1984); *R.T.A. Corp. v. Consolidated Rail Corp.,* 594 F.Supp. 205 (S.D.N.Y. 1984); *Miller v. AAACon Auto Transport, Inc.,* 447 F.Supp. 1201 (S.D.Fla.1978); *Westhemeco, Ltd. v. New Hampshire Ins. Co.,* 484 F.Supp. 1158 (S.D.N.Y.1980); *U.S. Steel International, Inc. v. SS Lash Italia,* 439 F.Supp. 365 (S.D.N.Y.1977); *Foster Wheeler Energy Corp. v. Daily Exp. Inc.,* 485 F.Supp. 268 (M.D.Pa.1980).

The opinion in *Brown Transport Corp., supra,* from this court, discusses in detail the prior decisions on the issue and the requirements of the sufficiency of the written notice. They need not be repeated here but by this reference are made a part hereof. Some courts have required strict compliance with the form of the notice, while others have held that substantial compliance was all that is mandated. Here, the only writing which could possibly be considered notice is the notice from the forwarding agent. This notice is not in compliance with the ICC regulations. Defendant Railroad would have been in violation of the ICC's regulations if they had attempted to make settlement pursuant to that notice. The writing says it is "formal notice that claims will be filed by the importer/consignee" when all particulars are determined. It is clear such writing was not the "claim" and that a proper claim would be filed. The filing of a proper claim helps the consignee by facilitating prompt investigation of its claim and it benefits the carrier by providing a reliable record of its potential liability.

Here, there is no writing of any kind from the shipper or the consignee, or from their insurer, that either has a claim, or intends to pursue a claim, or the nature or extent of the claims. The shipper and consignee, and in all probability the insurer, knew of the requirement set out in the bill of lading relative to filing a claim and they were chargeable with the provisions of the regulations issued by the ICC. There is no suggestion that shipper, consignee or the insurer was misled by actions, conduct or statements, or that defendant is in any way estopped from relying on the provisions of the bill of lading.

Plaintiff having failed to comply with the mandatory provisions of the bill of lading and defendant not having waived its right to rely thereon, the motion for summary judgment is GRANTED, and this action is DISMISSED.

Copy of this opinion and order is forwarded to counsel.