See also 765 F.Supp. 1142.

**DAVIS ACOUSTICAL CORPORATION, Plaintiff,**

v.

**CAROLINA FREIGHT CARRIERS CORPORATION, Defendant.**

**No. 89–CV–198.**

United States District Court, N.D. New York.

June 11, 1991.

Bouck Holloway Kiernan & Casey, Albany, N.Y. (David J. Pollock, of counsel), for plaintiff.

McNamee Lochner Titus & Williams, Albany, N.Y. (G. Kimball Williams, of coun-

sel), and Kroll & Tract, New York City, for defendant.

## MEMORANDUM—DECISION AND ORDER

McCURN, Chief Judge.

### Background

Plaintiff, Davis Acoustical Corporation ("Davis"), is seeking to recover for damage to a shipment of pine wood, which allegedly occurred while that wood was being shipped via defendant, Carolina Freight Carriers Corporation ("Carolina Freight"), an interstate common carrier. In connection with that shipment Davis and Carolina Freight entered into a bill of lading agreement. *See* Affidavit of Richard Scanlon (November 29, 1990) ("Scanlon Affidavit I"), Ex. B thereto (copy of bill of lading). On the front of that bill of lading it specifically provides, in relevant part:

[t]hat every service to be performed hereunder shall be subject to all the bill of lading terms and conditions in the governing classification on the date of shipment.

Shipper hereby certifies that he is familiar with all the bill of lading terms and conditions in the governing classification and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

*Id.* (emphasis in original). Here, the "governing classification" refers to the National Motor Freight Classification—a publication of the American Truck Associations, Inc. *See* Affidavit of Richard Scanlon (April 24, 1991) (Scanlon Affidavit III), Ex. 2 thereto. The classification in effect during the relevant time period basically required that as a condition precedent for recovery against the carrier, Carolina Freight, a written claim had to be filed within nine months after the delivery of the property.[1]

On October 21, 1988, Davis mailed a letter to Carolina Freight which stated:

Gentlemen:

This letter will act as notice of claim for damages occurring during shipment by Carolina Freight of specialty wood being shipped from Davis Acoustical, 155 Mullet Hill Road, Southbury, CT 06488, to T.C. Finishing, 2501 S. Hume, Marshfield, WI 54449.

The date of the receipt of the damaged cargo in Marshfield was 3/29/88. The goods were rejected and returned to the factory. Please be advised that your company is being held liable for the value of this cargo which is $70,000.

Scanlon Affidavit I, Ex. E thereto. That letter concluded:

If you have any questions, please contact our insurance carrier:

The Hartford
P.O. Box 536
Albany, NY 12201
(518) 447–9600
Claims Rep., Joseph F. Weber

*Id.* A copy of that letter was also sent to Mr. Weber. *Id. See* Affidavit of Joseph F. Weber (February 5, 1991) at ¶ 4.

Carolina Freight is now moving for summary judgment because, in its view, Davis did not timely file a written claim—a condition precedent to recovery under the terms and conditions of the bill of lading, as amplified by the governing classification.

1. In its entirety, that provision states:
As a condition precedent to recovery, claims must be filed in writing with:
1. the receiving or delivering carrier; or
2. the carrier issuing this bill of lading; or
3. the carrier whose line the loss, damage, injury or delay occurred; or
4. the carrier in possession of the property when the loss, damage, injury or delay occurred.
Such claims must be filed within nine months after the delivery of the property (or, in the case of export traffic, within nine months after delivery at the port of export), except that claims for failure to make delivery must be filed within nine months after a reasonable time for delivery has elapsed.
Suits for loss, damage, injury or delay shall be instituted against any carrier no later than two years and one day from the day when written notice is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts of the claim specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier shall be liable, and such claims will not be paid.
Scanlon Affidavit III, Ex. 2 thereto at 287.

Carolina Freight further argues that summary judgment in its favor is mandated because Davis' letter of October 21, 1988 ("the claim letter") does not meet the minimum filing requirements of 49 C.F.R. § 1005.2(b) (or "the regulation").

Plaintiff's response is twofold. First, it contends that Carolina Freight's summary judgment motion must be denied because there is a question of fact regarding filing of a notice of claim by Davis. Second, Davis believes that summary judgment is not appropriate because its claim letter was in full compliance with § 1005.2(b) "as a matter of law." [2] Alternatively, Davis claims that a factual issue exists as to the sufficiency of the claim letter. The court will consider those arguments in reverse order, because, if the claim letter is not legally sufficient, as Carolina Freight contends, then the issue of whether it was timely filed would obviously be moot.

## Discussion

### I. Adequacy of Written Claim

The Second Circuit has expressly held that the Interstate Commerce regulations at 49 C.F.R. § 1005 apply to litigated claims for loss or damage against interstate carriers. *See Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 904 (2d Cir. 1980), *cert. denied*, 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). In a section entitled "minimum filing requirements," § 1005.2(b) sets forth the three elements which must be included in a claim, such as the one at issue here. Thus, after *Pathway*, the court must examine the claim letter in light of those regulatory requirements.

### A. Assertion of Liability

■ The second "minimum filing requirement[ ]" of § 1005.2(b) is that the claim must "[a]ssert[ ] liability for alleged

loss, damage, injury, or delay,...." 49 C.F.R. § 1005.2(b)(2). 49 C.F.R. § 1005.-2(b)(2) (1990). The issue of whether Davis' claim letter satisfies that requirement need not detain the court for long. That is so because Carolina Freight does not seriously contend that the claim letter does not comply with the second requirement of § 1005.-2(b). Indeed, Carolina Freight concedes that the letter does comport with § 1005.-2(b)(2) by expressly stating, "Arguably, the October 21, 1988 letter sufficiently meets the second minimum filing requirement of asserting liability for alleged loss damage, injury or delay." Defendant's Memorandum of Law at 11. That admission is based upon the language in the claim letter stating, "[y]our company [Carolina Freight] is being held liable for the value of the cargo...." Scanlon Affidavit I, Ex. E thereto.

Based upon that concession, and the fact that the court is convinced that the quoted language fulfills the § 1005.2(b)(2) assertion of liability requirement, the court concludes that Davis' claim letter is legally sufficient with respect to this element of the regulation. Indeed, the language used by Davis to assert liability against Carolina Freight is remarkably similar to that used by the shipper in *Bobst Div. Of Bobst Champlain, Inc. v. IML–Freight*, 566 F.Supp. 665 (S.D.N.Y.1983). In *Bobst* the court held that the language "we hold your company liable for said damages" was adequate to satisfy the second minimum filing requirement of § 1005.2(b). *Id.* at 668.

### B. "Specified or Determinable Amount of Money"

■ The court is equally certain that Davis' claim letter conforms to the third requirement of § 1005.2(b), which is that there must be a "[c]laim for the payment of a specified or determinable amount of money,...." 49 C.F.R. § 1005.2(b)(3) (1990).[3]

---

**2.** Davis makes this contention even though it did *not* make a cross-motion for summary judgment on that basis.

**3.** That requirement is of particular importance in light of the strict mandate to carriers contained in 49 C.F.R. § 1005.2(d):

Whenever a claim is presented against a proper carrier for an uncertain amount, such as "$100 more or less," the carrier against whom such claims is filed shall determine the condition of the baggage or shipment involved at the time of delivery by it, if it was delivered, and shall ascertain as nearly as possible the

In the present case, the claim letter specifically stated that Davis was holding Carolina Freight "[l]iable for the value of this cargo which is $70,000." Scanlon Affidavit I, Ex. E thereto. It is Carolina Freight's belief that the quoted language does not satisfy § 1005.2(b)(3).

The cases relied upon by Carolina Freight to support its position are readily distinguishable, however. In both *R.T.A. Corp. v. Consolidated Rail Corp.*, 594 F.Supp. 205 (S.D.N.Y.1984), and *Pathway*, 630 F.2d 900, the shippers completely failed to mention a dollar amount in their respective claim letters, and thus those courts rightly concluded that the claims were insufficient under § 1005.2(b)(3). *See RTA*, 594 F.Supp. at 210; and *Pathway*, 630 F.2d at 902–905. *Bobst* is also easily distinguishable because the shipper there sought to hold the carrier liable for an "estimated amount of damage [of] approximately $100,000.00," and the court reasoned that because of the uncertainty of that amount, the shipper was not in compliance with the minimum filing requirements of § 1005.-2(b)(3). *Bobst*, 566 F.Supp. at 669. Obviously, in the present case, there was a specific dollar amount in the claim letter— not a mere estimate. Therefore, the court is of the view that Davis has complied with the third requirement of § 1005.2(b).

Lastly, although somewhat more factually analogous to the present case than the cases just discussed, the court is not convinced that *Norton Spiel Associates, Inc. v. Carolina Freight Carriers Corporation*, No. Cv 89–2317 (RR) (E.D.N.Y. February 6, 1991), another case relied upon by Carolina Freight, mandates a different conclusion here. In *Norton Spiel* plaintiff's claim letter contained no claim for a specific amount of damages. *Id.* at 13. Furthermore, that letter "[e]xpresse[d] a desire to 'settle' a claim, suggesting some flexibility in the amount to be paid." *Id.* Attached to that letter was a report from an independent inspection company reporting "[o]nly that the 'cost of the damaged article is '$35,000.00 *est.*' " *Id.* at 13–14 (emphasis in original). Relying upon *Bobst*, the court held "[t]hat the ... correspondence, with its mere statement that the *estimated cost* of the damaged equipment was $35,000, does not satisfy the requirements of law for filing a claim against an interstate carrier." *Id.* at 15 (emphasis added).[4]

There are two meaningful distinctions between *Norton Spiel* and the present case. The first and most important distinction is that, unlike *Norton Spiel*, the value in this claim letter was *not* estimated. Moreover, this claim letter, unlike the *Norton Spiel* letter, does not evince any indication on the part of Davis to settle or negotiate this claim; there is no suggestion of flexibility by Davis with respect to the amount of damages alleged. Consequently, the court finds that Davis' claim letter satisfies § 1005.2(b)(3).

### C. Facts Sufficient to Identify Shipment

The issue of whether Davis' claim letter is sufficient in light of the first element of § 1005.2(b) is a much closer call. Basically it is Carolina Freight's position that the claim letter cannot satisfy the first filing requirement under § 1005.2(b) because of certain omissions, such as no reference to a bill of lading or way bill pro number and no reference to a shipment date. Carolina Freight further maintains that the claim

---

extent, if any, of the loss or damage for which it may be responsible. *It shall not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money shall have been filed in accordance with the provisions of paragraph (b) of this section.*
49 C.F.R. § 1005.2(d) (1990) (emphasis added).

**4.** The court in *Norton Spiel* observed in *dicta* that, "Clearly, the cost of damaged equipment, even if precise, does not always equate to the amount of damages sought." *Id.* at 14. Significantly, in determining that plaintiff's claim did not comport with § 1005.2(b)(3), Judge Raggi did *not* rely on the fact that the plaintiff sought recovery for the cost of the damaged goods as a basis for finding plaintiff's claim insufficient. And this court is not inclined, as Carolina Freight seems to imply that it should, to read into *Norton Spiel* a broad rule that when a claim is based on value or cost of a damaged shipment, it must automatically be rejected as insufficient under § 1005.2(b)(3).

letter does not comply with § 1005.2(b)(1) because of errors therein, such as listing the wrong consignee and giving the wrong delivery date. Carolina Freight also claims that the claim letter is deficient because of an ambiguous reference to the shipped cargo. (The claim letter refers to a shipment of specialty wood, "whereas the bill of lading refers only to 'eight crates of IT 113620.'" Defendant's Memorandum of Law at 12.)

In support of its position, Carolina Freight relies on several cases, including *R.T.A.*, 594 F.Supp. 205. In *R.T.A.*, the court strongly implied that a letter "merely" stating that "'[a] loaded trailer was received with damage to the trailer itself, as well as the cargo inside,'" did not satisfy the first requirement of § 1005.2(b). *Id.* at 209–210. The court observed that plaintiff's letter did not include the delivery date, the trailer number, nor the contents of the trailer. *Id.* at 209. The court further recognized that even though the defendant carrier had sent out an inspector prior to the time plaintiff had sent its claim letter, that fact could not save it, because "[t]he regulations, . . ., make no exceptions to compliance with any of their provisions in the case of actual knowledge by the carrier." *Id.* at 209–10 (citing *Pathway Bellows, Inc.*, 630 F.2d 900).

Two other cases referred to by Carolina Freight provide additional insight into how courts have construed the § 1105.2(b)(1) sufficiency of identity requirement. In *Pathway*, the shipper sent a letter to the carrier referencing the freight inspection report, the way bill covering the shipment, and the railroad car in which the shipment was transported. The district court implicitly found that that information was sufficient to satisfy § 1005.2(b(1), and, on appeal, the Second Circuit did not reverse on that basis. Therefore, from *Pathway* it can be inferred that a similar description would meet the first requirement of § 1005.2(b).

Similarly, in *Bobst* the court held that the shipper's letter did sufficiently identify the shipment. That letter contained the approximate delivery date; the ocean bill of lading, as opposed to the motor carrier's bill of lading, references to the machine model; and the consignee's name. More important to the *Bobst*'s court determination that the claim adequately described the shipment, however, was the fact that one of defendant's terminal managers had no difficulty identifying the shipment on the basis of the letter containing the information just described. *See Bobst*, 566 F.Supp. at 668.

The difficulty in the present case arises from the fact that, in this court's view, Davis' claim letter falls somewhere in between those discussed above. Clearly, more information was to provided to the carrier here than in the letter at issue in *RTA*. Davis' letter did not, however, contain the type of information which would assist a carrier in conducting an investigation, such as that provided by the shipper in *Pathway*. Likewise, this claim letter did not include references to *any* type of bill of lading, as did that in *Bobst*. Moreover, as set forth below, also unlike *Bobst*, Carolina Freight was unable to locate the shipment which is the subject of this litigation based solely upon Davis' claim letter.

Carolina Freight's Director–Cargo Claims, Richard Scanlon, submitted an affidavit detailing the difficulties in conducting an investigation in this case due to the deficiencies in the claim letter mentioned above. Specifically, Mr. Scanlon opined:

> [I] can state for this Court that, based upon the information that was allegedly contained in the letter, Carolina could not conduct an investigation with respect to the shipment in question.

Scanlon Affidavit (March 20, 1991) ("Scanlon Affidavit II") at ¶ 5. Mr. Scanlon further explained:

> The reason that we could not perform an investigation is that the letter does not describe the shipment in question—the letter does not contain a copy of the bill of lading nor does the letter indicate our bill of lading or pro number. Our shipments are indexed by pro number. That is that number that we use to transport the shipment under and it also is the number under which we would send our

freight bill. This is the number generally referred to by most claimants when they file a claim. However, it is not necessary for a claim to contain a copy of the bill of lading or the pro number so long as there is sufficient specific information in the letter that enables us to identify the particular shipment and meets the Interstate Commerce Commission's requirements of a claim. The mentioning of the shipper's name and address, or the insurance company's name and address, nor the incorrect name of the consignee, nor an incorrect date of delivery, would not enable us to find a record of the shipment. If the letter had been received, we would have checked our shipment manifests to try to find information to locate a valid pro-number and/or bill of lading.

*Id.*

In light of the foregoing, plaintiff's bald assertion that "[i]t is reasonable to conclude that the information contained in the notice of claim was sufficient to identify the wood shipment in question ...," seems rather disingenuous. *See* Plaintiff's Memorandum of Law at 7. In support of that statement plaintiff cites to *Westhemeco Ltd. v. New Hampshire Ins. Co.,* 484 F.Supp. 1158 (S.D.N.Y.1980), but that case is inapplicable for several reasons. First, it does not hold, as Davis suggests, that whether a notice of claim is sufficient is a question of fact. Rather, in *Westhemeco* the court, in *dicta,* stated that it could not decide as a matter of law whether the defendant carrier had actual knowledge of plaintiff's intent to file a claim because of the "scanty record" before it. *Id.* at 1163.

■ The second, and more significant reason, which renders *Westhemeco* inapplicable here is that it is a district court case decided *prior* to *Pathway.* In *Pathway* the Second Circuit essentially held that despite the fact that the defendant carrier had complete knowledge of all the relevant facts pertaining to the damaged shipment, that knowledge did not dispense with the Interstate Commerce Commission ("ICC") regulatory requirements. *See also, Allianz–Ultramar CIA v. Norfolk & W. Ry.*

*Co.,* 668 F.Supp. 518, 519–20 (E.D.Va.1987) (and cases cited therein) ("By the great weight of authority, compliance with the written notice requirement of ... the bill of lading is mandatory, and verbal notice and even actual notice on the part of the carrier's employees will not suffice.") The Second Circuit's decision to require strict compliance with the minimum filing requirements of § 1005.2(b) was motivated, in part, by the fact that "[t]he regulations impose numerous obligations upon carriers, which are triggered by the receipt of a 'claim.'" *Id.* 630 F.2d at 904 (footnote omitted). The Court therefore reasoned:

> Having thus required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a claim, so that a carrier may know one when it sees one.

*Id.* Therefore, because plaintiff has failed to provide any persuasive legal support for its conclusion that the sufficiency of a claim presents a factual issue for the jury; or more specifically that it is for a jury to decide whether a given claim sufficiently identifies the damaged shipment, and because the Second Circuit has unequivocally held that claims must be examined in light of the ICC regulations, the court cannot agree that defendant's motion should be denied on the basis of a purported factual issue raised by Davis.

Davis next argues that in determining whether it sufficiently identified the damaged shipment in its claim letter, the court should also consider the inspection report requested by Carolina Freight and provided by an independent inspection agency. That report is dated April 6, 1988—approximately five and one half months prior to the date Davis allegedly submitted its claim letter to Carolina Freight. *See* Affidavit of David J. Pollock (February 8, 1991), Ex. J thereto. Unlike the claim letter, that report does contain a pro number, the accurate deliver date and the correct name of the consignee. Based upon that report, Davis asserts that "[i]f defendant could not identify the shipment with the notice of

claim alone, ..., the defendant clearly could have identified the shipment by reference to the inspection report and the notice of claim." *Id.* at ¶ 22.

 Davis overlooks the fact, however, that a carrier's actual or constructive knowledge is irrelevant in assessing a claim under § 005.2(b). *RTA,* 594 F.Supp. at 209–10 (and cases discussed therein). *Accord, Gooch v. Oregon Short Line R.R. Co.,* 258 U.S. 22, 24, 42 S.Ct. 192, 193, 66 L.Ed. 443 (1922); *St. Louis, Iron Mountain & So. Ry. Co. v. Starbird,* 243 U.S. 592, 603–04, 37 S.Ct. 462, 467, 61 L.Ed. 917 (1917) (even where a carrier has actual knowledge of a shipper's claim, the bill of lading requirement that a claim be submitted must be adhered to by the shipper). In addition, even assuming for the sake of argument that the court should examine the inspection report as well as the claim letter, to determine the legal sufficiency of the latter, nonetheless, the court must conclude that Davis' claim letter falls short of meeting the sufficiency of identity requirement. That is so because, as persuasively explained by the statement of Mr. Scanlon:

> It is true that we had a shipment inspected by Western Weighing and Inspection Bureau, but all such inspections go into a general file and they are held into a general file by pronumber until such time as we receive a claim that we can relate to the shipment. The Interstate Commerce Commission Regulations (49 U.S.C. [sic] § 1005.2(c)) specify that an inspection report is not a claim and the inspection report, on its face, specifies that it is not a claim. Based upon the information contained in the letter, had we received the claim, we would not have been able to match up the inspection report issued by Western Weighing on a shipment delivered April 4th with the claim letter sent by the plaintiff. If the plaintiff had attached a copy of the joint inspection report, we would have been able to locate the shipment in question in order to do an investigation. However, based upon the information contained solely in the letter, we could not conduct an investigation since we did not have in

that letter sufficient information to identify the shipment.

Scanlon Affidavit II at ¶ 7.

Given that undisputed proof, the court is convinced that Davis' letter of October 21, 1988 does not satisfy the first element of § 1005.2(b). It does not sufficiently identify the damaged cargo because, as Carolina Freight has convincingly shown, assuming it received that letter, it would have been unable to conduct an investigation, as it must in accordance with 49 C.F.R. § 1005.4. Consequently, because the court has decided that Davis' claim letter is legally insufficient under § 1005.-2(b), defendant's motion for summary judgment is granted. Having made that determination, the court need not address defendant's argument that that letter was not timely filed.

IT IS SO ORDERED.